DANIEL L. DYSART, Judge.
11 After a bench trial, brothers, Lionel Serigne, Jr., and ■ William Serigne, Sr., were convicted of sex, crimes committed against juvenile family members. Lionel Serigne was convicted of the aggravated rape of his cousin, D.A., and was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. William Serigne was convicted of the forcible rape of his cousin, D.A.; the sexual battery of his niece, B.M.; and the aggravated incest of his daughter, M.S. He was sentenced to serve a total of forty-four years >at hard labor without benefit of parole, probation or suspension of sentence. The defendants now appeal their respective convictions and sentences.
For the reasons that follow, we reverse the convictions of both defendants, and remand these matters for separate new; trials.
BACKGROUND
In 2009, D.A., then age thirty-nine, came forward to authorities to report sex crimes committed by her first cousins, brothers Lionel and William Serigne. She reported that the crimes had taken place commencing over thirty years prior when Lshe was six years old and continuing through and *303 until she was about twelve years old. She reported that a number of sexual acts were committed against her beginning with Lionel, who is eleven years older, and then followed by William, who is four years older. D.A. subsequently had conversations with her cousins B.M. and M.S., who .thereafter reported that sex crimes were committed against them by William Se-rigne, the uncle of B.M., and the father of M.S.
On April 7, 2010, Lionel Serigne was indicted on a single charge of violation of .La. R.S. 14:42 A(4), aggravated rape of a juvenile (D A.). The indictment read:
During the year 1981, [Lionel Serigne] committed aggravated rape upon a juvenile, where, the vaginal sexual intercourse is deemed to be without lawful consent of the victim, to-wit: The victim is under the age of twelve years, in violation of 1950’ La. R.S. 14:42 A(4).
Also in 2010, William Serigne was indicted on . three charges, aggravated rape during the year 1981(D.A.), sexual battery on or about October 31, 2004 (B.M.), and, aggravated incest during the year 1998 (M.S.). The indictment as to the charge of aggravated rape read: .
During the year of 1981, [William Se-rigne] committed aggravated rape upon a juvenile, where the oral sexual intercourse is deemed to be without lawful consent of the victim, to-wit: the victim is under the age of twelve years, in violation of 1950 La.R.S. 14:42 A(4).[1]
The defendants filed variods motions including Motions to Quash and Motions for Bills of Párticular. On September 28, 2011, the State moved to amend |sboth of the indictments. Specifically, the State moved to amend Lionel Serigne’s indictment as follows:
[T]o substitute the date:- “Prior to the year 1981” for the terms: “ ‘on or about the day of ‘During the year 1981.’”
The motion to amend William Serigne’s indictment read:
[T]o substitute the date: “on or after March 28, 1981” for the terms: “ ‘on or about the day of .During the year 1981[.]” . ,
The State moved" to consolidate the indictments for trial. Also, in response to motions- in limine filed by defendants re-gar ding-- the State’s use of “other crimes” evidence, the State responded that until its motion to consolidate all matters for trial was granted, it could not state which “other crimes” would be before the trier of fact as part of its case in chief. The trial court denied the State’s motion to consolidate.
Being precluded from consolidating the two trials, the State convened a second grand jury and obtained a new indictment on May 30, 2012. This second indictment, which jointly indicted the defendants, added a new element of the charge of aggravated rape as to each defendant, and reflected different dates for the charged offenses. The indictment as to the aggravated rape charge against each defendant how read:
Count 1) That WILLIAM R. SE-RIGNE, SR., ... on or after March 28, 1981 until and throughout the year 1983, ... did commit aggravated rape upon D.A., date of birth December 27, 1970, by having sexual" intercourse with D.A.; by having sexual intercourse with D.A. when two offenders participated in the act, the second offender being LIONEL" R. SERIGNE, JR.; when the victim was prevented front resisting the act from threats of great and immediate *304 harm, in violation of LA R.S. 14:42, to-wit: AGGRAVATED RAPE[J
J^Count 2) ... LIONEL R. SERIGNE, JR., ... between and including the years 1976 and 1983, did commit aggravated rape upon D.A., date of birth December 27, 1970, ... by having sexual intercourse with D.A.; by having sexual intercourse with D.A. when two offenders participated in the act, the’ second offender being WILLIAM R. SE-RIGNE, JR. [sic]; when the victim was prevented from resisting the act from threats of great and immediate harm, in violation of LA R.S. 14:42, to-wit: AGGRAVATED RAPE[.]
Additionally, William Serigne was indicted on three other charges:
Count 3) ... WILLIAM R. SERIGNE, SR., on or after March 28, 1981 until and throughout the year 1983, did commit aggravated rape upon. D.A., date of birth December 27, 1970, by having sexual intercourse with D.A.; when the victim was prevented from resisting the act from threats of great and immediate harm, in violation of LA R.S. 14:42, to-wit: AGGRAVATED RAPE,
Count ¡4) ... between October 22, 2004 and November 1, 2004, WILLIAM R. SERIGNE, SR., did commit a sexual battery of B.M., date of birth July 25, 1996, in violation of LA. R.S. 14:43.1, to wit: SEXUAL BATTERY, by fondling the genitals , of the minor victim,
Count 5) ,. during the years 1983[sic], 1994, 1995, 1996, 1997, 1998 and 1999, WILLIAM R. SERIGNE, SR., did commit aggravated incest upon his biological daughter, M.S., date of birth October 19, 1987, by lewd fondling or touching, and engaging in.sexual acts with M.S., including in the alternative, sexual battery, molestation of a juvenile and other prohibited sexual activity considered a crime under the laws of the State of Louisiana, all in violation of LA. R.S. 14:78.1, to-wit: AGGRAVATED INCEST. . .
Prior to trial, each defendant filed a motion to sever parties and for severance of offenses. The trial court denied the motions (joint participation was now charged in Counts 1 and 2 of the .indictment), and the case proceeded to' trial. Lionel Serigne re-urged his motion to sever on the first day of trial before any witnesses were sworn. His motion again was denied. After D.A. testified, defense | ^counsel for both defendants moved for a mistrial and again urged a motion to sever, this time based on the fact that D.A. testified that the defendants did -not participate together in any act of sexual intercourse. Both motions were denied.
At the close of the State’s case, defense counsel re-urged the motions to sever the parties and the offenses. It was argued that D.A. stated unequivocally that Lionel Serigne and William Serigne did not participate together in connection with the alleged rapes, thus disproving the State’s charge pursuant to La. R.S. 14:42 A(5), which was the sole basis for the defendants being tried together. Although the motions were not entitled “Motion to Quash,” the re-urged motions to sever nonetheless had the same substantive complaint.
Counsel for both defendants also argued for a mistrial based on the fact that the indictment contained a charge, specifically violation of La. R.S. 14:42 A(5), that was not substantiated by the trial testimony. They requested that the trial court do an in camera inspection of D.A.’s grand jury testimony in light of the fact that her trial testimony revealed that Lionel Serigne and William Serigne did not participate together in any alleged rape of D.A.. The trial court denied both the defense’s re *305 quest to review the grand jury testimony and the motion for mistrial.
On November 8, 2013, the trial court found William Serigne guilty on counts 1, 4 and 5. He was found not guilty on count 3. Lionel Serigne was found guilty on count 2 of the indictment.
In ruling on the counts of the indictment the trial court stated:
Count 1 before the Court is the defendant William Serigne, Sr., charged with aggravated rape pursuant to |fiLouisiana Revised Statute 14:42 of [D.A.] based on the victim being under the age of twelve. The Court finds beyond a reasonable doubt the defendant is guilty.
Count 2 before the Court is the defendant Lionel Serigne, Jr., charged with aggravated rape pursuant to Louisiana Revised Statute 14:42 of [DA] based on the victim being under the age of twelve. The Court [sic] beyonds [sic] a reasonable doubt the defendant is guilty.
Count 3 before the court is William Se-rigne, Sr. charged with a second count of aggravated rape of [D.A.]. The Court finds the defendant not guilty on the second count.
Court [sic] 4 before the Court is William Serigne, Sr., charged with a sexual battery pursuant to Louisiana Revised Statute 14:43.1 of a minor. The Court finds beyond a reasonable doubt the defendant is guilty.
Counsel [sic] before the Court is William Serigne, Sr., charged with aggravated incest pursuant to Louisiana Revised Statute 14:78.1, the Court finds beyond a reasonable doubt the defendant is guilty.
On its own motion, on November 22, 2013, the trial court amended its verdict on count 1, finding William Serigne guilty of the lesser and included offense of forcible rape. In its written reasons for amending the verdict, the trial court stated:
The court finds that the testimony of the victim proved that the sexual contact progressed throughout the years and got more severe until it finally reached full sexual penetration. At the end of the progression of sexual contact, the victim was at least' 12 years old and maybe. 13 years old and the defendant was 17 years old and possibly 18 years old. After years of forcing sexual contact with the victim including forcing the victim to have oral sex, defendant finally progressed to forcing the victim’s vagina onto his penis and penetrating her. The defendant’s years of physically forcing himself upon this young victim caused the victim to realize that her resistance would not be successful. The victim’s attempts of resistance were overcome by force and the defendant always got what he wanted and he always made sure he used enough force to accomplish his sexual |7acts (sexual touching, oral sexual contact, sexual penetration).
Due to the age of the victim and her lack of capacity to understand the sexual acts and the physical force used by the defendant over the course of three years the victim learned that her resistance to sexual conduct was unsuccessful. The sexual contact finally culminated by the defendant forcefully holding the victim with two hands and placing down hard enough to allow his penis to penetrate her vagina. This penetration occurred without the consent of the victim and with the victim’s resistance being met with force, which force was overcome on this occasion as happened on so many previous occasions.
The defendant turned 17 years of age on March 22, 1983. The court finds beyond a reasonable doubt that after the defendant turned 17 years of age he committed a sexual act involving vaginal penetration upon the victim, D.A., who *306 was at least 12 years of age. The victim did not give her consent to the sexual intercourse and her resistance to the penetration was overcome by force of the physical actions of the defendant on the day of the rape and by the years of the defendant overcoming her with force making sure the victim knew her resistance to any and all sexual acts would do no good.
Following the verdict, the defense again filed motions to review D.A.’s grand jury testimony to demonstrate perjury, impeachment arid/or non-disclosure of exculpatory material, and to again argue that the motions to sever should have been granted. All defense motions were denied.
Following oral argument in this appeal, this Court ordered the State to produce D.A,’s grand jury testimony taken prior to the 2010 indictments and prior to the 2012 indictments. The requested transcripts were provided to this Court under seal.
Lionel Serigne raises four assignments of error; however, as we find he is entitled to a new trial based on an error patent, we pretermit discussion of them. |sWilIiam Serigne also raises four ■ assignments of error, two of which address the trial court’s denial of motions for severance and a motion for new trial. As we find the trial court erred in jointly trying Lionel and William Serigne together, entitling William Serigne to -a new trial, we preter-mit discussion of his other assignments of error.
DISCUSSION
Error Patent:
We find that binding Supreme Court and Fourth Circuit precedent requires a finding of reversible patent error as Lionel Serigne was charged by indictment with a capital offense, and he was therefore precluded from waiving a- jury trial.
On May 30, 2012, Lionel "Serigne was indicted for the aggravated rape of D.A. “between and including the years 1976 and 1983.”
The Louisiana Constitution of 1974, Article 1, § 17(A), requires that “[a] criminal case in which punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict.” La. Const. Art. I, § 17; accord La.Code Crim. Proc. art. 782. Section 17 and Article' 782 specifically state that the jury cannot be knowingly and intelligently waived in a capital case.
Pursuant to La. R.S. 14:42, from the start date charged in the indictment, January 1, 1976, ■ through September 8, 1977, only the death penalty was available 'for those charged, with aggravated rape. The statute provided in pertinent part:
Whoever commits the crime of aggravated rapé shall be’punished by death.
During the.time span- of the indictment, the U.S. Supreme Court held the death penalty for rape to be unconstitutional. Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976). Thereafter, effective September 9, 1977, the Louisiana State Legislature amended La. R.S. 14:42 to provide that,
“[w]hoever commits the crime of aggravated rape- shall punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”
La. Acts 1977, No. 343.
In State v. Holmes, 263 La. 685, 269 So.2d 207 (1972), the Court considered the effect on Louisiana law of the United States Supreme Court’s 1972 decision in *307 Furman[2] that invalidated the death penalty. The State argued that Furman “declassified” all former capital cases and thus none of the capital rules of proceeding applied. The Court disagreed, holding;
[W]e conclude that we should (at least until the legislative process has reorganized the criminal law and procedure in view of Furman) interpret Article 7, Section 41 of the Louisiana Constitution as referring to classes of crimes, and that those which the legislature has classified as capital offenses shall be tried by a jury of twelve, all of whom must concur to render a verdict. Id'. at 209 (adopting “classification” theory).
See State v. Flood, 263 La. 700, 269 So.2d 212, 213-14 (1972) (refusing to ignore constitutional capital case classification provisions simply because Furman was decided; “[tjhose offenses classified as capital before Furman are still classified as capital offenses”). See also State v. Whatley, 320 So.2d 123, 125 (La.1975) (rejecting defendant’s claim that Furman declassified first degree murder from being a capital offense and that he could not be tried as an adult); State v. Lott, 325 So.2d 576, 578-79 (La.1976) (no waiver of jury or unanimous verdict permitted in Imtrial of 1972 murder, even though Furman had invalidated use of the death penalty).
Applying Holmes, we find its holding applies equally to aggravated rape for which the statutory .penalty remained death through September 9, 1977. State v. Rhymes, 284 So.2d 923, -924-25 (La. 1974). The capital classification and rules of proceeding were also applied to a 1972 aggravated rape that predated the 1973 criminal code amendments[3] that reinvigorated Louisiana’s ability to execute the death penalty postrFurman. State v. Hunter, 306 So.2d 710, 711-12 (La.1975) (Justice Calogero writing and noting the majority’s continued adherence to the Holmes rule, id. 711, n. 1). Hunter illustrates the reasoning of such application: Whereas Furman judicially invalidated the application-of the death penalty, the Louisiana Legislature’s intent that serious crimes (first degree murder, aggravated rape) should be punished by death remained- firm, and, therefore, so did its conviction that these serious allegations deserved capital safeguards. Post-Fur-man, the Legislature took steps to make its desired penalty (death) again enforceable. Thus, the judicial intervention neither affected nor reflected the Legislature’s statement and intent on these crimes’ classification as “serious” and in need of capital case safeguards to ensure a fair trial. ;
In State v. Davies, 350 So.2d 586, 589 (La.1977), the Court expressly stated that at' the time of the alleged crime, March 1976, “the offense of aggravated rape was classified as a capital offense.” 'Id. (citing Rhymes and Holmes). In State v. McZeal, 352 So.2d 592, 604 (La.1977), an alleged October 1974 aggravated rape also was deemed subject to the capital rules of proceeding. Subsequent Supreme Court precedent continued to enforce Holmes for aggravated rapes alleged to have occurred prior to the September 9, 1977 amendment to La. R.S. 14:42. In a thorough opinion, the Court ia-State v. Rich, 368 So.2d 1083, 1084-85 (La.1979), found reversible error *308 patent when the trial of an alleged August 31, 1977 aggravated rape did not result in a unanimous verdict. In State v. Williams, the Court reaffirmed its holding in Rich and rejected an aberrational holding in State v. Carter, 362 So.2d 610, 512-15 (La.1978). Carter attempted to distinguish McZeal on the basis that, by the time of trial, the Legislature’s September 9, 1977 amendment had become effective; in other words, it attempted to treat the statutory change in punishment as a procedural change with retroactive effect.[4] Id. at 513-14. In Williams, the Supreme Court overruled Carter’s holding, stating:
The unanimous verdict, the sequestration of the jury and other safeguards erected by statute for capital cases are too important to permit them to be retroactively erased. Therefore, the jury in an aggravated rape case, when the rape occurred prior to September 9, 1977, the effective date of Act 343 of 1977, should return a unanimous verdict. Williams, 372 So.2d 559, 560 (La.1979).
Therefore, applying the above precedent to the facts of this case, the indictment start date of January 1, 1976, clearly places the charge against Lionel Serigne into the capital case classification. See e.g. State v. Breaux, 08-1061, pp. 9-10 (La. App. 3 Cir.4/1/09), 6 So.3d 982, 989 (La. App. 3 Cir.2009) (reversible error patent for failure to follow unanimous verdict capital rule where indictment 112alleged aggravated rape timeframe that spanned before and after the September 9, 1977 statutory change). The United States Supreme Court’s July 6, 1976 invalidation of the death penalty for rape in Selman neither affected this legislative classification nor application of the capital rules of proceeding. See Davies, 350 So.2d at 589 (Sel-man ’s invalidation of the death penalty has no effect upon our Legislature’s classification of aggravated rape as a capital crime for purposes of Louisiana law.); McZeal, 352 So.2d at 604-05 Rejecting State’s position that post-Selman, the alleged 1974 rape became “de-capitalized,” and holding capital rules of proceeding apply to crime classified as capital at the time it allegedly occurred); Rich, 368 So.2d at 1084 (accord).
As the Court in McZeal stated:
“The Constitution of the state has provided different tribunals for the trial of capital offenses, offenses necessarily punishable by imprisonment at hard labor, etc., and such procedure necessarily constitutes due process of law, and cannot be changed in any class of cases by a mere act of the Legislature.” Id. at 600. It follows, therefore, that the defendant’s right to all of the procedural safeguards which accompany a capital charge remained intact. These necessarily included his right to be tried before a jury of twelve, all of whom must concur to render a verdict, and his right to have quashed an indictment joining this offense with another offense not triable by the same mode of trial. Consequently, the misjoinder of offenses in this case was not cured or rendered benign by Selman. ... “[T]he error must be recognized as ‘prejudicial to the substantive rights of the accused (and) a substantial violation of a ... statutory right.’ ” Id. at 605 (second ellipses original).
Notably, in McZeal, a unanimous jury convicted the defendant of aggravated rape (the error occurred in the joinder of a non-capital offense with the aggravated rape *309 charge). Here, Lionel Serigne had no jury to render any verdict. Louisiana Constitution Article 1, § 17 and La.Code Crim. Proc. art. 782 require that all [iacapital cases “shall be tried before a jury of twelve persons, all of whom must concur to render a verdict.” (Emphasis supplied). Likewise, the waiver of the jury is strictly forbidden in capital cases. Thus, Lionel Serigne’s “agreement” to a bench trial was not “knowing and intelligent” and the resulting judge decision is “invalid and illegal” Id.; see Lott, supra; State v. Davenport, 13-1859,: p. 20 (La.5/7/14), 147 So.3d 137, 150; State v. Porter, 176 La. 673,146 So. 465 (La.1933).
The State argues that the United States Supreme Court’s ruling in 1976 declaring the death penalty for aggravated rape unconstitutional, and the 1977 amendment to La. R.S. 14:42 providing that the penalty for aggravated rape was life imprisonment, created a circumstance where only one year of the timespan (1976) charged in the indictment fell into the realm of a capital offense. The State therefore argues that the change in the law permits the State to choose between trying the case as either a capital or a non-capital offense. In support of this position, the State cites to State v. Hypolite, 13-1365 (La.App. 3 Cir. 5/14/14), 139 So.3d 687, writ denied, 14-1242 (La.1/23/15), 159 So.3d 1056, arguing that Goodley, 398 So.2d 1068 (La.1981)(re-versible error when first degree murder charge resulted in non-unanimous responsive verdict of manslaughter) is no longer controlling.
Hypolite did not involve a question of waiver of a jury. Rather, it dismissed the defendant’s argument as to the constitutionality of Louisiana’s scheme of allowing non-unanimous jury verdicts in cases where life imprisonment must be imposed. The Third Circuit did not consider the assignment of error, as the defendant had not raised it in the lower court. Id., 13-1365, p. 25, 139 So.3d at 704. That is not the issue facing this Court on review.
| ^Further, Goodley has not been overturned and thus remains our authority. We adhere to the Supreme Court’s consistent analysis and review of this issue, which extends from Holmes through Good-ley in its determination that La. R.S. 14:42 turns upon the determination of when the offense is alleged to have occurred in the indictment. As Justice Crichton observed, “It is imperitive to note that the bill of information sets the parameters and dictates the mode of trial.” State v. Dahlem, 14-1555 (La.3/15/16), — So.3d ——, 2016 WL 1048578.
The Constitution and law of this state require capital/non-capital decisions to be made before a case is tried. La. Const. Art. I, § 17; La.Code Crim. Proc. art. 782, cmt. (c); Goodley, 398 So.2d at 1070-71. The classification cannot be an after-the-fact assessment. Therefore, we find the State was bound to follow the rules of procedure in a capital case.
Sufficiency of the Evidence:
Both defendants argue on appeal that there was insufficient evidence to convict them. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55 (citing State v. Hearold, 603 So.2d 731, 734 (La.1992).
In this case, however, we decline to review the record as to Lionel Serigne for sufficiency of the evidence, as we con-sidér the patent error to be a structural defect, which is a “deféct affecting the framework within which the trial proceeds, rather than simply an error in the trial *310 process itself.” Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Structural errors infect the entire trial process and necessarily render a trial fundamentally unfair; they deprive a defendant of basic protections, without which a criminal trial cannot reliably serve its function as a |isvehicle for the determination of guilt or innocence. See Neder v. U.S,, 527 U.S. 1, 8-9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); see also State v. Ruiz, 06-1755, p. 6 (La.4/11/07), 955, So.2d 81, 85. Structural errors are subject to automatic reversal, and therefore harmless error analysis is inapplicable. See Neder, 527 U.S. at 8, 119 S.Ct. 1827; Fulminante, 499 U.S. at 309, 111' S.Ct. 1246; see also State v. Langley, 06-1041, pp. 12-13 (La.5/22/07), 958 So.2d 1160, 1168 (“[A] structural error, by.its very nature, impacts the entire framework of the trial from beginning to end, without reference to any other trial consideration.”).[5]
Therefore,- if the trial has been infected with a structural error, there has been no verdict within the meaning of the Sixth Amendment. See Sullivan v. Louisiana, 508 U.S. 275, 280, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (“There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the same verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless.”) (rejecting harmless error analysis for structural error),
A verdict rendered contrary to constitutional or statutory authority is invalid and illegal. See State v. Davenport, 13-1859, p. 20 (La.5/7/14), 147 So.3d 137, 150 (citing State v. Goodley, 423 So.2d 648, 650 (La.1982)). A criminal defendant has no right to an unlawful verdict, nor can he expect that such a verdict will be given effect. See id. (citing State v. Givens, 403 So.2d 65, 67 (La.1981)). As such, where a case presents a structural error, the verdict is without effect, whether it is a verdict of guilty or a verdict of acquittal. See id., 13-1859, p. 21, 147 So.3d at 150 (“[A]n illegal verdict acts as neither an acquittal nor a|,«conviction”) (citing State v. Campbell, 95-1409, p. 5 (La.3/22/96), 670 So.2d 1212, 1214); see also State v. Mayeux, 498 So.2d 701, 705 (La.1986) (jury verdict containing nonwaivable defect operates as neither a conviction nor an acquittal).
As , a general rule, the Double Jeopardy Clause of both the federal and Louisiana constitutions protects a defendant “against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense.” Monge v. California, 524 U.S. 721, 727-28, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998); U.S. Const. Amend. V. See also Davenport, 13-1859, p. 7, 147 So.3d at 142; La. Const. art. I, § 15; La.Code Crim. Proc. art. 591.
But, if there has been no legal verdict, a defendant is not placed in jeopardy. See Langley, 06-1041, p. 15, 958 So.2d at 1169.' (“Consequently, where there was no structural error or jurisdictional defect, there is no basis whatsoever for concluding that the trial ... should be given no effect in a double jeopardy analy *311 sis.”). This follows from thé premise that any verdict, whether a conviction or ah acquittal, is without effect. See Davenport, 13-1859, p. 20, 147 So.3d at 150.[6] Cf Evans v. Michigan, — U.S. -—, 133 5.Ct. 1069,185 L.Ed.2d 124 (2013) (finding that a verdict of acquittal is unreviewable and bars retrial even if based on erroneous evidentiary rulings or erroneous interpretations of governing legal principles).
An examination of La.Code Crim. Proc. art. 595 supports this view. Article 595 provides that “A person shall not be considered as having been in jeopardy in a trial in which ... [t]he court was illegally constituted or lacked jurisdiction.” La. Code Crim. Proc. art. 595(1). An “illegally constituted” court includes cases 117where a verdict was rendered by an unlawful number of jurors. See Goodley, 423 So.2d at 650 (verdict of 10-2 in trial for capital murder which required unanimity was invalid and no jeopardy attached); State v. Gros, 204 La. 705, 16 So.2d 238, 239-40 (La.1943) (trial and conviction by jury of twelve .when should have been by jury of five was not legally constituted; defendant not put in jeopardy); see also State v. Kent, 262 La. 695, 264 So.2d 611, 614 (La.1972) (“Article 595 is meant to be illustrative of non-jeopardy proceedings in trials, setting out examples of frequent bases for dismissal of a prior proceeding where the defendant has not been placed in ‘danger’....”).
We find that Lionel Serigne’s case falls within the meaning of an illegally constituted court under the foregoing jurisprudence, thus rendering the verdict null and void. Likewise,' structural error occurred when Mr. Serigne was tried without a jury, of twelve, all of whom had to concur to reach a verdict, as required by Louisiana law. See Sullivan, 508 U.S. at 281-82, 113 S.Ct. 2078 (“The right to trial by jury reflects, we have said, ‘a profound judgment about the way in which law should be enforced and justice administered’ ;., The deprivation of that right, with consequences that áre "necessarily unquantifiable and indeterminate, unquestionably- qualifies as ‘structural error.’”).
Accordingly, a review for the sufficiency of the evidence cannot be undertaken in a case where no valid verdict has been rendered when a -reviewing court’s two options are to either uphold the .verdict or to legally acquit. See generally State v. Hearold, 603 So.2d 731, 734 (La.1992) (Appellate courts should review sufficiency of the evidence claim first because an accused may be entitled to an acquittal). See , also Sullivan, 508 U.S. at 280, 113 S.Ct. 2078 (Where there has been 118no verdict within the meaning of the Sixth Amendment, “[t]here is no object, so to speak, upon which harmless-error scrutiny can operate.”) (emphasis in original).
We how review the evidence adduced at trial relative to William 'Se-rigne. Th'e standard to' be used when reviewing the sufficiency of the evidence to uphold -a conviction is whether or not, viewing, the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved all of the essential elements of the crime charged beyond a reasonable doubt. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55-56 (citing La.Code‘ Crim. Proc. art. 821; State v. Hampton, 98-0331, p. 13 (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999)). The standard is an *312 objective one that tests the overall evi-. dence, both direct and circumstantial, for reasonable doubt. Louisiana Revised Statute 15:438 provides that the fact finder, when analyzing circumstantial evidence, must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. Marcantel, supra (citing State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83.
The testimony of a single victim or witness alone is usually sufficient to support a verdict, as appellate courts will not second-guess credibility determinations by the fact finder beyond the constitutional standard of sufficiency. State v. Dorsey, 10-0216, p. 43 (La.9/7/11), 74 So.3d 603, 634 (citing State v. Davis, 02-1043, p. 3 (La.6/27/03), 848 So.2d 557, 559).
The requirement that the evidence be viewed in the light most favorable to the prosecution obliges the reviewing court to defer to “[t]he actual trier of fact’s rational credibility calls, evidence weighing and inference drawing.” State v. Mussall, 523 So.2d 1305, 1311 (La.1988). It is not the duty of the reviewing court 119“to decide whether it believes the witnesses or whether the conviction is. contrary to the weight of the evidence.” Id.
Courts have recognized that in sexual abuse cases that continue over time, exact dates often cannot be supplied. State v. Mazique, 09-845, p. 12, fn. 10 (La.App. 5 Cir. 4/27/10), 40 So.3d 224, 234 (citing State v. Bolden, 03-0266 (La.App. 5 Cir. 7/29/03), 852 So.2d 1050).

1. Sufficiency of the Evidence as to Forcible Rape ofD.A.

William Serigne was charged by indictment with the aggravated rape of D.A. on or after March 28, 1981 through the end of 1983.. He too was charged with having sexual intercourse with a child under the age of twelve, and that he and Lionel Serigne had jointly participated in the act. At trial, D.A. was shown a photo from January 1983, when she was twelve years old. . She testified that William Se-rigne raped her sometime between 1981 and 1983. D.A. testified that both defendants stopped sexually molesting her sometime in 1984. William* Serigne denies that he ever molested or raped D.A. He argues that D.A.’s testimony was inconsistent with her earlier statements and actions.
The trial judge found him guilty as charged on November 8, 2013, but issued a written amended verdict on November 22, 2013, finding William Serigne guilty 'of the lesser and included offense of forcible rape, a violation of La. R.S. 14:42.1. The trial court stated that the evidence failed to show that D.A. was under the age of twelve at 'the time of the offense,' which was the only applicable aggravating circumstance in the aggravated rape statute during the relevant time period.[7]
12f)La, R.S. 14:42.1, as in effect from September 8, 1978, through 1983, provided in pertinent part:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.[8]
*313 In the trial court’s written reasons for amending its verdict from aggravated rape to forcible rape, it stated:
The court finds that the testimony of the victim proved that the sexual contact progressed throughout the years and got more severe until it finally reached full sexual penetration.
Again, applying the standard of review, we cannot say that the trial court was in error in finding William Serigne guilty of forcible rape. .

2. Sufficiency of the Evidence as to Aggravated Incest of M.S.

In this assignment William Se-rigne argues that the evidence was insufficient to support his conviction for the aggravated incest of his daughter, M.S.
Count 5 of the indictment charged that William Serigne committed aggravated incest upon his biological daughter, M.S., “during the years 1983, 1994, 1995, 1996, 1997,1998 and 1999.”[9]
The crime of aggravated incest, La. R.S. 14:78.1, was added to the Louisiana Criminal Code in 1993, by Acts 1993, No. 525, § 1, eff. June 10,1993. At the time it was enacted through 1999, the statute provided in pertinent part that:
| ⅞1 A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as ... biological child_
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity, constituting a crime under the laws of this state.
[[Image here]]
(3) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
William Serigne’s argument as to sufficiency is directed to M.S.’s credibility. M.S. testified that her father molested her/sexually abused her from when she was age five or six until she was twelve years old.
Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that at least one time during 1994-1999, William Serigne engaged in lewd fondling or touching of M.S. that was done with the intent to arouse his own sexual desires.

3. Sufficiency of the Evidence as to the Sexual Battery ofBM.

In this assignment, William Serigne argues that the evidence was insufficient to convict him of committing sexual battery on his niece, B.M., who was born July 25, 1996, by fondling her genitals between October 22, 2004 and November 1, 2004.
At the pertinent time, La. R.S. 14:43.1 provided, in part:
A. Sexual battery is the intentional engaging in any of the following acts, with another person where the offender acts without the consent of the victim, or where the act is consensual but the oth *314 er person, who is not the spouse ofj^the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus' or genitals of the victim by the offender using any instrumentality or any part of the .body of the offender; or
(2) The touching of the anus or- genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
B. Lack of knowledge of the victim’s age shall not be a defense. However, where the, victim is under seventeen, normal medical treatment or normal sanitary care of an infant shall not be construed as an offense under the provisions of this Section.
B.M., who was in eleventh grade at the time of trial, recalled having gone to a Halloween party at her aunt’s home in 2004, when she was eight years old. She testified that her parents gave William Serigne a ride home. She testified that he carried her to the car and sat her in his lap in the back seat. During the drive, she fell asleep and awoke to William Serigne touching her on her vagina, under .her clothes.
In 2010, when she was fourteen, B.M. met with Detective Rogers of the St Bernard Parish Sheriff’s Office. At trial, B.M. was shown her prior statement to Detective Rogers. In the statement, when asked whether William Serigne had touched her over or under her shorts or underwear, she- had replied: “I don’t know. I think it was under.” At trial she said she had not been siire when she made that statement, and she had been nervous or had not known how to verbalize it. B.M. had also stated that the touching had occurred for only- a few seconds.
As stated above, this Court is not to review the credibility of the witness’s testimony; therefore, viewing all- the evidence in a light most favorable to the prosecution,' a- rational trier of fact could have found beyond a reasonable doubt that William Serigne inappropriately touched M.S. in 2004.
| ^William Serigne’s Motion to Sever; Misjoinder:
Having found that Lionel Se-rigne was mandated to have been tried by a jury, we must consider now the effect of trying William Serigne, all of whose charges were triable by either judge or jury, in a joint trial with Lionel Serigne.[10]
Louisiana Code of Criminal Procedure art. 494 provides:
Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the samé act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of- the defendants need not be charged in each count. •
In the case of misjoinder of offenses, “[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or .provide whatever other relief justice requires.”- La.Code Crim. Proc. art. 495.1.
This Court reviews de novo questions of joinder. Further, federal authorities are persuasive. See State v. Patout, *315 00-2241, p. 39 (La.App. 4 Cir. 2/13/02), 812 So.2d 702, 721. The Court may examine the indictment’s language and the trial evidence. Id.
| ¾As discussed previously, the defendants were charged by separate indictments in 2010. Lionel Serigne was originally charged with one count of aggravated rape of D.A., which was alleged to have taken place prior to 1981. William Serigne was charged with three unrelated counts (other than one common victim); the aggravated rape of D.A. alleged to have taken place “during the year 1981;” the aggravated incest of M.S.; and the sexual battery of B.M. The original indictments, as amended in 2011, set the time period for Lionel Serigne’s alleged rape as before 1981, and William Serigne’s as after March 28,1981.
Thus, the time frames set forth in the 2010 indictments, as amended, mutually excluded joint participation. There was no allegation by the State in either indictment that the defendants jointly participated in any crime. Despite the non-related indictments, the State moved to consolidate and sought to introduce evidence of both Lionel Serigne and William Serigne’s alleged actions regarding all alleged victims in the separate trials of each defendant. The defense moved to discover what, if any, “other crimes” evidence the State intended to use, to which the State responded that until its motion to consolidate all matters for trial was granted, it could not state which “other crimes” would be before the trier of fact as part of its case in chief. The trial court denied the State’s motion to consolidate.
After the trial court denied the State’s motion to consolidate the two cases for trial, the State convened a second grand jury, which returned one indictment charging both men with aggravated rape, and again charging William Serigne with aggravated incest and sexual battery. The indictment specifically charged that Lionel and William Serigne had jointly particípate ed in- the rape of D.A. The evidence adduced at trial, specifically the testimony of D.A., failed to establish that a joint rape had occurred.
12sWe find in this instance that an error did occur in the joint prosecution of the defendants, a prejudicial error that was not and could not have been known by the trial court without the benéfit of the grand jury testimony, ' but which error falls squarely on the shoulders of the State’s attorney in allowing the indictment to go forward.
The record reveals that defense counsel moved prior to trial to sever the parties and the offenses. The judge denied the motions and the case proceeded to trial. At the end of D.A.’s testimony and again at the close of the State’s case, counsel re-urged the motions to sever the, parties and the offenses, arguing that D.A. stated unequivocally that Lionel Serigne and William Serigne never acted together in connection with the alleged rapes, thus disproving the State’s charge pursuant to La. R.S. 14:42A(5). This new revelation totally negated the State’s charge as to La. R.S. 14:42A(5), which was the sole basis for the defendants being tried together.
Defense counsel also argued for a mistrial based on the fact that the indictment contained a charge, specifically violation of La. R.S. 14:42A(5), that was not substantiated by the trial testimony. They requested that they be allowed to review D.A.’s grand jury testimony to obtain the facts upon which the indictment was obtained, or, alternatively, .requested that the trial court do an in camera inspection, of the grand jury testimony. The trial court 'denied both the defense’s request to review *316 the grand jury testimony and the motion for mistrial.
La.Code Crim. Proc. art. 434 provides for those instances when disclosure of grand jury materials are permitted. An exception to the requirement that grand jury testimony be kept secret was established in State v. Peters, 406 So.2d 189 (La.1981). The Peters decision required the prosecutor to disclose a witness’s grand laniury testimony to the defendant because that testimony contained material that was exculpatory evidence which the prosecutor was required to disclose to the defendant pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Accordingly, State v. Peters recognized that the statutory rule of secrecy of grand jury testimony must yield to constitutional rights. See State v. Poland, 00-0453, p. 5 (La.3/16/01), 782 So.2d 556, 559. The Louisiana' legislature codified the holding in Peters with the addition of La. Code Crim. Proc. art. 434.1.[11]
Following oral argument and based on the trial testimony of the victim, this Court ordered the State to produce D.A.’s grand jury testimony for both the 2010 and 2012 indictments. We reviewed the testimony to determine a basis for the State’s charge of joint participation.
The 2010 grand jury transcript reveals that D.A. denied that she was ever raped by William Serigne. This revelation explains why the State did not charge joint participation in the amended indictment, as it was a factual impossibility. Instead, the 2010 indictment, as amended in 2011, charged Lionel Serigne with aggravated rape prior to the year 1981, and charged William Serigne with aggravated rape[12] “on or after March 28,1981,” thereby making joint participation impossible.
127In the second grand jury, D.A. testified that the alleged sexual acts progressed over time and that she was forced to have intercourse with Lionel on one occasion, and once with William. She stated that they would sometimes be together, but specifically stated that it was not during the two alleged acts of intercourse, again negating joint participation. Despite this, the State moved forward on the 2012 indictment charging joint participation in the aggravated rape.[13]
Based on D.A.’s testimony before the second grand jury, it is clear that these two defendants should not have been tried together on the premise that they acted in concert to commit aggravated rape. See Patout, 00-2241, p. 39, 812 So.2d at 721, quoting U.S. v. Welch, 656 F.2d 1039,1049 (5th Cir.1981) (“[i]t is clear that defendants charged with two separate albeit similar [offenses] having one common participant are not, without more, properly joined.”); also see Patout, supra, quoting U.S. v. Nettles, 570 F.2d 547, 551 (5th Cir.1978) *317 (‘When the connection between different groups, is limited to a few individuals common to each, but those individuals commit separate acts which involve them in separate offenses with no common aim, then the requisite substantial identity of facts or participants is not present.”). ....
It is also apparent, with the benefit of the grand jury testimony, that the State was aware at the time it charged the defendants that they did "not act in unison. Despite this knowledge, the State re-indicted the defendants, and changed the dates for Lionel Serigne’s charge, apparently to overlap the dates of the charges to obtain | gRthe joint indictment based on “joint participation.” The defendants did not become aware of these inconsistencies until D.A. testified at trial that the two defendants never acted together to commit rape, and that the single charge against Lionel Serigne was not related to William Serigne’s charges as to D.A.
In this case, as we now know, Lionel Serigne and William Serigne did not act together in committing an act of rape on D.A.,. as she testified at trial that the defendants acted separately. It is also apparent that the State knew D.A.’s first grand jury testimony did not implicate William Serigne at all in .an aggravated rape; and, that despite the State’s best effort by way of convening a new grand jury, D.A.’s second grand jury, testimony did not support the charge that Lionel Serigne and William Serigne acted together in an aggravated rape.
It is troubling to consider here that the State indicted the defendants for a charge of joint participation in commission of an aggravated rape, when the State had knowledge of evidence quite to the contrary. The defendants were apparently unaware that the additional charge against them, which resulted in a joint trial, was unsupported by evidence until D.A. testified at trial.
As a result of the joint participation charge, defense counsel for each defendant joined forces to prepare and defend the case. William Serigne was clearly tainted by the State’s overreaching theme that this was a family affair and a family secret. (The trial court was clearly influenced by this presentation. It stated in reasons for judgment that “as a result of this remaining a family secret ... another young woman ended up being at stake,” and “since this matter also remained a family secret, we’re up to now a third person.”).
Our review of the record convinces us that from inception of this case, the prosecution was a maladroit attempt to cumu-late and join various and unrelated laooffenses spanning more than two decades to further the State’s prosecution theme of exposing “the dark family secret.” The effort was fraught with misapplication of the law existing at the time of the alleged acts. It is clear to this Court that these two defendants should not have been tried jointly.
Brady/Giglio Material:
At the close of trial, in conjunction with a motion for mistrial, defense counsel requested that the trial court perform an in camera inspection of D.A.’s grand jury testimony.. The State argued that the issue of whether the defendants were guilty of joint participation in a rape of D.A. was now in the hands of the fact-finder, i.e., the judge. The State’s attorney stated: “If at the conclusion of the case the finder of fact would conclude that ... there was not a joint rape as indicated in [the indictment], then actually the perfect remedy ... would be that the two defendants should be found not guilty, not a mistrial.” The Stated added that as the trial had commenced, the.' defendants would have to prove prejudice in relation *318 to a motion to sever. We find, after reviewing the 2010 and 2012 grand jury testimony of D.A., that prejudice has been proven.
In her 2010 grand jury testimony, D.A. denied that she ever had sexual intercourse with William Serigne. In her 2012 grand jury testimony, D.A. testified that she was raped by William Serigne on one occasion. This change in.testimony was never revealed to William Serigne’s defense counsel, despite the State having full knowledge that D.A.’s recollections of alleged events thirty years earlier were constantly changing. Further, and perhaps more importantly, at no time, in any of her statements to the police or testimony before the grand jury, or at trial did D.A. ever state that William Serigne and Lionel Serigne acted together in raping her. ■
hnThe Louisiana Supreme Court has recognized “that a prosecutor’s duty to disclose material exculpatory evidence does'not end with a jury’s verdict and. that after a. conviction the prosecutor also is bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction,’ ” State v. Pierre, 13-0873, p. 11 (La.10/15/13), 125 So.3d 403, 410.
The 2010 and 2012 grand jury transcripts were provided to this Court by the prosecutors, and, ostensibly had been reviewed by the State at some time after this Court requested them. It should have become blatantly obvious at that point that Brady material should have been provided to the defendants. The admission by D.A. in the 2010 grand jury that she did not have intercourse with William Serigne was completely exculpatory as intercourse was a fundamental element of the crime which William Serigne was charged — aggravated rape.
 In State v. Higgins, 03-1980 (La.4/1/05), 898 So.2d 1219, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005), the Louisiana Supreme Court outlined the principles applicable to review of grand jury testimony for exculpatory material, as follows:
As a. general matter, a defendant is not entitled to production of a transcript of a secret grand jury proceeding against him, even for use at trial in conducting cross-examination. La.Code Crim. Proc. art. 434; State v. Peters, 406 So.2d 189, 190-91 (La.1981). The purpose of this rule is not to protect a defendant or witness at a subsequent trial, .but to encourage the full disclosure of information about crime. Id.; see also State v. Ivy, 307 So.2d 587 (La.1975). However, the rule of secrecy is not absolute. In some situations justice may require that discrete segments .of grand jury transcripts be divulged for use in subsequent proceedings. State v. Trosclair, 443 So.2d 1098, 1102-03 (La.1983)(citing Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979)). Thus a trial court Isimay act upon a specific request stated with particularity and review grand jury transcripts in camera to determine if information contained therein is favorable to the accused and material to guilt or punishment. Trosclair, 443 So.2d at 1103; Peters, 406 So.2d at 191.
Non-disclosure of exculpatory evidence once requested violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Brady, supra; State v. Johnson, 48,325, p, 20 (La.App. 2 Cir. 9/18/13), 135 So.3d 705, 716-17. This rule has been expanded to include evidence which would impeach the testimony of a witness where the reliability *319 or credibility of the witness may be determinative of guilt or' innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct., 763, 31 L.Ed.2d 104 (1972).
A “Brady” violation is composed of three elements:' 1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; 2) the evidence must have been suppressed by the State, either willfully or inadvertently; and 3) prejudice must have ensued. Johnson, 48-325, p. 20-21, 135 So.3d at 717 (citing State v. Garrick, 03-0137 (La.4/14/04), 870 So.2d 990). Failure to disclose exculpatory evidence does not require reversal as a matter of due process unless the non-disclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different result. Id. Should non-disclosure of exculpatory material be discovered, the trial court has the discretion to order a mistrial. La.Code Crim. Proc. art. 729.5.
Reversible error occurs when failure to disclose the exculpatory material actually prejudices the defendant and the trial court’s failure to remedy the error demonstrates an abuse of discretion. Only when the defendant is “lulled into a misapprehension of the state’s case through the prosecution’s failure to disclose |s?timely or fully, and the defendant suffers prejudice,” ..., that basic unfairness results which constitutes reversible error., State v. Allen, ,94-2262 (La.11/13/95), 663 So.2d 686. Ordinarily, the effects of a discovery violation may be remedied by effective cross-examination.
We have reviewed the 2010 grand jury testimony of D.A., and find that the State’s withholding of exculpatory evidence is reversible error. This non-disclosure clearly impacted the defendants’ decision to waive a jury (as discussed previously). Further, had this evidence been before the trial court, it may have ruled differently on key procedural motions, e.g., motion to sever defendants, motion for new trial. It is also compelling to consider that D.A. was the sole witness against both of the defendants, and that she was recalling memories from thirty years earlier. The reliability/credibility of D.A.’s testimony was clearly a factor in determining guilt or innocence. The withholding of the 2010 grand jury testimony, in which the sole witness recounted a completely different version of events than the version later given at trial, deeply prejudiced the defendants.
We find that William Serigne is entitled to a new trial.
Conclusion:
Accordingly, as Lionel Serigne was charged with a capital offense, he could not by law1 knowingly and intelligently waive a jury trial, with' the jury' returning a unanimous verdict. William Serigne was charged with three non-capital offenses, any of which could be tried by the judge or a jury. As such, the" two defendants should not have been tried together. Lastly, as both defendants were denied the benefit of crucial exculpatory evidence that weighed directly on the issue of guilt, and influenced their attorneys’ trial strategy, we And they aré both entitled to a new trial on these grounds.
| ^Therefore, the convictions of both defendants are reversed, and these matters are remanded for new trials in accordance with this opinion.
CONVICTIONS REVERSED; REMANDED
BONIN, J., concurs with additional reasons.

. We note that the word '‘oral’' wás not added to La. R.S. 14,:42A until 2001, by Acts 2001, No. 301, § 1, which also amended La. R.S, 14:41, the definition of rape.

. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

. By La. Acts 1973, Nos. 125-26, effective July 2, 1973, the Legislature eliminated from La.Code Crim. Proc. arts. 813 and 817, the jury’s ability to qualify its verdict or render a responsive verdict of life in prison. The change suggests that the legislature believed that Furman’s invalidation of the death penalty turned upon wrongful allowance of this discretion. Rhymes, 284 So.2d at 923-24.

. Notably, La. R.S. 14:42, which provides the penalty for aggravated rape, is not a procedural article,

. The United States Supreme Court has found structural error in a limited class of cases, including the total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of the defendant's race, deprivation of the right to self-representation at trial, the right to a public tical, and erroneous reasonable doubt instructions. See Neder, 527 U.S. at 8, 119 S.Ct. 1827 (citing Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)); see also State v. Harris, 11-0941, p. 20 (La.App. 4 Cir. 8/2/12), 98 So.3d 903, 917.

. Davenport recently held that where the trial judge acts beyond his power or authority, his ruling of acquittal “is ultra vires and is of no effect.” .Thus, the .acquittal did not bar retrial of the defendant for the same crime.

. D.A. turned twelve on December 27, 1982.

.- Guilty of forcible rape has been a legislatively provided for responsive verdict to the charge of aggravated rape since 1975, prior to the dates of the allegation in Count 1 of the indictment. See La. Code Crim. Proc. art. 814(A)(8), as amended by Acts 1975, No. 334, § 1.

. As M.S. was not born until 1987, the year "1983" alleged in the indictment is presumed to be a typographical error that was supposed to read "1993.”

. The earliest date charged in William Se-rigne’s 2012 indictment for. aggravated rape was March 28, 1981, at which time it was no longer a capital offense. As such, William Serigne was free to choose- to be tried by either a judge or a jury.

. La.Code Crim. Proc. art. 434.1 provides for exceptions to the general rule. The exceptions are that the prosecution may disclose grand jury proceedings to others in law enforcement or prosecution, but those to whom the information is disclosed are also bound to secrecy. The district attorney shall disclose to the defendant material evidence favorable to the defendant that was presented to the grand jury. The district attorney may also disclose to a witness at trial any statement of that witness, including the defendant if he testifies, that is inconsistent with the trial testimony of that witness. Acts 2012, No. 842, § 1, effective 8/1/12.

. The indictment charges that William Se-rigne had "oral sexual intercourse” with a victim under the age of twelve. "Oral sexual intercourse” was not added to the definition of rape, La. R.S. 14:41, until 2001. See La. Acts 2001, No. 301, § 1.

. We again note that La. R.S. 14:42 did not include “joint participation” until 1984. See La. Acts 1984, No. 579 (effective 9/3/84).