# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #059

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of December, 2017**, are as follows:

**PER CURIAM**:

2016-K -1034      STATE OF LOUISIANA v. WILLIAM SERIGNE & LIONEL SERIGNE (Parish of
                  St. Bernard)

                  For the foregoing reasons, we reverse the court of appeal's
                  determination in errors patent review that Lionel Serigne's
                  conviction and sentence must be set aside because he was unable
                  to validly waive a jury trial. We reinstate Lionel's conviction
                  and sentence. In addition, we reverse the court of appeal's
                  determination that William Serigne is entitled to a new trial
                  based on a Brady violation, which issue was never passed on by
                  the trial court, and we reinstate his convictions and sentences.
                  However, we also remand to the district court for further
                  proceedings to determine if Lionel and William are entitled to
                  new trials based on undisclosed Brady material in the grand jury
                  testimony. Thereafter, Lionel and William may appeal any
                  unfavorable determination by the district court on remand as well
                  as seek appellate review of any previously pretermitted
                  assignments of error. In addition, we preserve William's claim of
                  prejudicial misjoinder for appellate review after further
                  proceedings in the district court.
                  REVERSED AND REMANDED.

SUPREME COURT OF LOUISIANA

No. 2016-K-1034

STATE OF LOUISIANA

VERSUS

WILLIAM SERIGNE & LIONEL SERIGNE

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ST. BERNARD

**PER CURIAM**

In 2009, 39-year-old D.A. accused her cousins William and Lionel Sergine of sexually abusing her when she was a child. Other family members, B.M. and M.S., also came forward to accuse William Serigne of sexually abusing them. Because of these accusations, Lionel was indicted for the aggravated rape of D.A. committed before 1981. William was separately indicted for the aggravated rape of D.A. based on an allegation of "oral sexual intercourse" committed in or after 1981, sexual battery of B.M., and aggravated incest of his daughter, M.S.

After the trial court denied the state's motion to try the defendants together, the state convened a second grand jury and obtained a new indictment. Lionel was indicted for the aggravated rape of D.A., committed between the years of 1976 and 1983, in which William was alleged to have jointly participated. William was indicted for two counts of the aggravated rape of D.A., committed between the years of 1981 and 1983, in which Lionel was alleged to have jointly participated in one count. William was also indicted for the sexual battery of B.M. and aggravated incest of M.S. The co-defendants' motions to sever their trials were denied and the matter proceeded to a bench trial.

After the victim testified, the co-defendants re-urged their motions to sever,

and moved for a mistrial, on the basis that the victim's testimony did not support the allegation that the co-defendants jointly participated in raping her. The co-defendants also asked the trial court to perform an in camera review of the victim's grand jury testimony. The trial court denied the motions and declined to review the grand jury testimony.

The trial court found Lionel guilty as charged of aggravated rape and William guilty of forcible rape, not guilty of a second count of aggravated rape, and guilty of sexual battery and aggravated incest. The court sentenced Lionel to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, and sentenced William to a total of 40 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

The court of appeal panel vacated the convictions and sentences. *State v. Serigne*, 14-0379 (La. App. 4 Cir. 5/2/16), 193 So.3d 297. The court of appeal first noted that Lionel was indicted for an aggravated rape alleged to have occurred between 1976 and 1983, which span included a time when La.R.S. 14:42 provided a penalty of death for aggravated rape.[1] Citing, inter alia, *State v. Holmes*, 263 La. 685, 269 So.2d 207 (1972), the court found as an error patent that, because Lionel's offense was classified as capital during at least part of the time alleged in the indictment, the procedural safeguards for capital trials applied and therefore a unanimous 12-person jury was necessary. Because Lionel was found guilty in a bench trial rather than by a unanimous 12-person jury, the court of appeal vacated his conviction and sentence. Because the court of appeal vacated Lionel's

---

[1] In *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), the U.S. Supreme Court found that Louisiana's mandatory death penalty for first degree murder violated the Eighth Amendment. In *Selman v. Louisiana*, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), the U.S. Supreme Court found that a mandatory sentence of death for aggravated rape violated the Eighth Amendment for the reasons expressed in *Roberts*. In response to *Selman*, the legislature amended La.R.S. 14:42 to provide a penalty of life imprisonment without parole eligibility for aggravated rape. 1977 La. Acts 343 (eff. September 8, 1977).

conviction and sentence in errors patent review, it did not consider his four assignments of error.

Regarding William, the court of appeal first found the evidence sufficient to support the convictions before then finding that his trial was misjoined to Lionel's. The court noted that no evidence was presented at trial in support of the allegation that Lionel and William jointly participated in a rape, which allegation was the justification for trying them together. After hearing oral argument, the court of appeal obtained the grand jury transcript and found there was also no evidence presented to the grand jury that would support the state's allegation of joint participation in a rape.[2] The court of appeal then found that the state withheld the grand jury transcript from the codefendants in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), because it contained evidence William did not rape D.A. and William and Lionel did not jointly rape D.A.[3] Therefore, the court of appeal ordered that William receive a new trial and pretermitted consideration of all remaining assignments of error.

The court of appeal erred in applying *State v. Holmes* to find that Lionel was indicted for an offense classified as capital and therefore unable to waive a jury trial. In *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Supreme Court held in a single-paragraph per curiam that the manner in which the death penalty was imposed and carried out in Georgia and Texas constituted cruel and unusual punishment in violation of the Eighth Amendment. Five justices concurred individually and at length in the judgment, disagreeing in many aspects

---

[2] The grand jury testimony is not included in the appellate record submitted to this court to review.

[3] There was no *Brady* claim assigned as error and the court of appeal reached this issue sua sponte after it obtained the grand jury transcript.

(such as their understanding of the history and meaning of the Cruel and Unusual Punishments Clause), but four justices appeared to agree in one regard: statutory schemes that give unbridled discretion to the jury to determine if the death penalty will be applied are so arbitrary as to violate the Eighth Amendment. *See Furman*, 408 U.S. at 253, 92 S.Ct. at 2734 (Douglas, J., concurring) ("[W]e deal with a system of law and of justice that leaves to the uncontrolled discretion of judges or juries the determination whether defendants committing these crimes should die or be imprisoned. Under these laws no standards govern the selection of the penalty. People live or die, dependent on the whim of one man or of 12."); *id.*, 408 U.S. at 294–95, 92 S.Ct. at 2754–55 (Brennan, J., concurring) ("[J]uries . . . make the decision whether to impose a death sentence wholly unguided by standards governing that decision"); *id.*, 408 U.S. at 310, 92 S.Ct. at 2763 (Stewart, J., concurring) ("I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed."); *id.*, 408 U.S. at 314, 92 S.Ct. at 2764–65 (White, J., concurring) ("[The] recurring practice of delegating sentencing authority to the jury and the fact that a jury, in its own discretion and without violating its trust or any statutory policy, may refuse to impose the death penalty no matter what the circumstances of the crime [violates the Eighth Amendment]").

In cases that followed *Furman*, this court grappled with the implications of a constitutionally unenforceable death penalty that had not yet been repealed or replaced by the legislature. For example, in *State v. Flood*, 263 La. 700, 269 So.2d 212 (1972), the court found that murder remained *classified as a capital offense* for purpose of determining whether an accused is entitled to bail. The court stated:

> [W]e conclude that *Furman v. Georgia* does not destroy the system of

4

classification of crimes in Louisiana. Murder is still a crime, and, when our legislature last acted with respect to it, murder was, as it has ever been, a capital crime. The crime remains unchanged; only the penalty has been changed. True, the penalty is what made murder a capital offense, and it is not actually a capital offense in Louisiana today. But the Nature of the offense has not changed—only the punishment.

Because the system of classifying certain serious offenses as capital, and then providing the procedural structure for the administration of criminal justice based on that classification is so fundamental in the organization of our criminal statutes, we find it preferable to make no change in the interpretation of the constitutional provisions concerning bail. Those offenses classified as capital before *Furman v. Georgia* are still classified as capital offenses, and those charged with an offense punishable by death before *Furman v. Georgia* are not entitled to bail where the proof is evident or the presumption great.

*Flood*, 263 La. at 705–06, 269 So.2d at 214.

Likewise, in *State v. Holmes* (decided on the same day as *Flood*), the court found that murder remains *classified as a capital case*, although it could not be punished as such under *Furman*, and therefore must be tried before a unanimous, sequestered 12-person jury. Dicta suggests *Flood* and *Holmes* were decided against the backdrop of a belief that the Eighth Amendment problem identified in *Furman* could be readily remedied by a legislative switch to a mandatory death penalty.[4] That belief did not prove correct. In response to *Furman*, Louisiana, along with 21 other states, eliminated the jury's role in sentencing in a capital prosecution entirely by making the imposition of the death penalty mandatory. *See* John W. Poulos, *The Supreme Court, Capital Punishment and the Substantive Criminal*

---

[4] *See, e.g. Holmes*, 263 La. at 691, 269 So.2d at 209 (emphasis added):

However, it was not the legislature, but the United States Supreme Court that has held the Imposition and Execution of the death sentence, as now applicable in our State, to be violative of the United States Constitution. No presumption arises that any other provision of Louisiana law has been affected by the United States Supreme Court, except those having to do with the Imposition and Execution of death sentence. Nor, indeed, has the United States Supreme Court eliminated the possibility that *the Louisiana legislature might enact statutes which could constitutionally impose the death sentence, when the sentence is mandatory and cannot be applied in a discriminatory manner.*

*Law: The Rise and Fall of Mandatory Capital Punishment*, 28 Ariz. L. Rev. 143, 201–02 (1986). As noted above (see n.1), Louisiana's mandatory death penalty for first degree murder was then declared unconstitutional in *Roberts v. Louisiana*.

Thus, *Flood* and *Holmes* arose in a particularly unusual and volatile era of developing death penalty jurisprudence and associated legislative responses. Subsequently, however, in *State v. Schrader*, 518 So.2d 1024 (La. 1988), this court rejected prior jurisprudence under which a defendant, who could not have been sentenced to death due to the constitutional infirmities of the statutes in place at the time of the homicide, would have nonetheless been entitled to the protections afforded the accused in a capital case (including a sequestered jury) because the homicide prosecution retained for procedural purposes its capital classification. The court held:

> We now hold, despite its long lineage, the jurisprudential presumption of prejudice for "capital cases" does not apply to a "capital case" where the defendant never faced the prospect of the death penalty and where counsel failed to press the point in the trial court, or object to the lack of sequestration. In the absence of actual prejudice, this right to sequestration is waived.

*Schrader*, 518 So.2d at 1037. Although the co-defendants argue *Schrader* should be narrowly construed as applying only to jury sequestration (and not any other procedural protections afforded a capital defendant), nothing in that opinion, which acknowledged *Flood* and *Holmes*, suggests the analysis should be so confined. Instead, we find *Schrader* more broadly rejected the prior "capital classification" jurisprudence, and that it applies equally to Lionel Serigne here.[5] Lionel, who

---

[5] In addition, even accepting for the sake of argument the viability of the capital classification jurisprudence after *Schrader*, the parties and the court below neglect to address *State v. Louviere*, 00-2085 (La. 9/4/02), 833 So. 2d 885, in which this Court held:

> [N]othing in Art. I, § 17 requires the jury to decide all phases of the trial . . . we find the relevant limitation embodied in Art. I, § 17 is that of all the components of a trial, from indictment to sentence, only the issue of the ultimate penalty of death is strictly required to be put before the jury.

never faced the prospect of the death penalty, validly waived his right to a jury trial and never challenged that waiver until the court of appeal raised this issue as an error patent. Therefore, we reinstate his conviction and sentence. However, for the reasons below, we remand to the district court rather than the court of appeal. After further district court proceedings, as described below, Lionel may seek review in the court of appeal of his pretermitted assignments of error.

As noted above, the court of appeal obtained a transcript of the grand jury proceedings after hearing oral argument and determined the transcript contained *Brady* material, although a *Brady* claim had not been presented to the trial court first and ruled upon below. William claimed on appeal the trial court erred in denying his motion to sever and erred in denying his request for a new trial based on prejudicial joinder. By intertwining the joinder and *Brady* issues so closely, the court of appeal relied on evidence the trial court did not consider, i.e. the grand jury transcript, in determining whether the trial court erred in declining to sever the trials.

> Code of Criminal Procedure art. 494 provides:
>
> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

The trial court is vested with broad discretion in determining whether to grant a motion to sever, and its determination should be upheld in the absence of an abuse of that discretion. *State v. Brooks*, 88-1420 (La. 1/30/89), 541 So.2d 801, 804–05. In the present case, the state alleged in its second indictment that William and

---

*Louviere*, 00-2085, p. 8, 883 So.2d at 893.

7

Lionel jointly participated in the aggravated rape of D.A.[6] Based on this allegation, and with no contrary information before it, the trial court did not abuse its discretion in denying the various motions to sever before trial.

At trial, however, the testimony did not support the allegation of joint participation, and the co-defendants sought a new trial on that basis. To obtain a new trial for misjoinder, it is necessary for a defendant to show prejudice. *See* La.C.Cr.P. art. 851(2), (4); *cf.* La.C.Cr.P. art. 495.1. The court of appeal discussed the prejudice William suffered only in the context of the analysis of the possible *Brady* violation. *See Serigne*, 14-0379, pp. 31–32, 193 So.3d at 319. Review is further hampered by the absence of the grand jury transcript from the appellate record. Under the unusual circumstances presented here, faced with a record inadequate to evaluate this issue, and mindful of the constitutional prohibition against appellate factfinding in a criminal matter, La. Const. Art. 5, § 5(C), we remand to the district court to determine whether the grand jury testimony contains undisclosed *Brady* material warranting new trials for Lionel and William in accordance with *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) and *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Thereafter, Lionel and William can seek review in the court of appeal with regard to any unfavorable ruling by the district court. William can also seek review of his claim of prejudicial misjoinder as well as any pretermitted assignments of error.

For the foregoing reasons, we reverse the court of appeal's determination in errors patent review that Lionel Serigne's conviction and sentence must be set

---

[6] Unlike present law, *see* R.S. 14:42(A)(5), the statute defining the offense during the pertinent period did not include multiple, joint perpetrators among the aggravating factors that elevated the grade of the offense. That aggravating factor was first added by 1984 La. Acts. 579. Therefore, the allegation of joint participation in the indictment, while not necessary as an element of the offense, was likely included to obtain a joint trial of the co-defendants.

aside because he was unable to validly waive a jury trial. We reinstate Lionel's conviction and sentence. In addition, we reverse the court of appeal's determination that William Serigne is entitled to a new trial based on a *Brady* violation, which issue was never passed on by the trial court, and we reinstate his convictions and sentences. However, we also remand to the district court for further proceedings to determine if Lionel and William are entitled to new trials based on undisclosed *Brady* material in the grand jury testimony. Thereafter, Lionel and William may appeal any unfavorable determination by the district court on remand as well as seek appellate review of any previously pretermitted assignments of error. In addition, we preserve William's claim of prejudicial misjoinder for appellate review after further proceedings in the district court.

**REVERSED AND REMANDED**