# Supreme Court of Louisiana

The Opinions handed down on the **3rd day of May, 2016**, are as follows:

**PER CURIAM**:

2015-C -1430        LAMAR CONTRACTORS, INC. v. KACCO, INC. (Parish of St. Bernard)

For the reasons assigned, the judgment of the court of appeal is vacated insofar as it affirms the district court's judgment reducing the award of damages in favor of Lamar Contractors, Inc. The case is remanded to the district court for the sole purpose of entering an amended judgment in favor of Lamar Contractors, Inc. for the full amount of damages previously determined with no reduction for contributory negligence.  In all other respects, the judgment of the court of appeal is affirmed.  All costs in this court are assessed against defendant, Kacco, Inc.

JOHNSON, C.J., concurs.
CRICHTON, J., additionally concurs and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2015-C-1430

LAMAR CONTRACTORS, INC.

VERSUS

KACCO, INC.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ST. BERNARD

PER CURIAM

In this case, we are called upon to decide whether the district court erred in reducing plaintiff's damage award based on a finding that plaintiff's actions contributed to defendant's breach of contract. For the reasons that follow, we vacate the judgment insofar as it reduced plaintiff's award.

**UNDERLYING FACTS AND PROCEDURAL HISTORY**

For purposes of the issue before us, the facts are largely undisputed. Lamar Contractors, Inc. ("Lamar") was general contractor on a construction project. Lamar entered into a subcontract with Kacco, Inc. ("Kacco") to provide metal framing and drywall work on a construction project. The subcontract included a "pay-if-paid" payment provision, which afforded Lamar ten days to remit payment to its subcontractors after receipt of payment from the owner.

Kacco began work on the project in October 2010 but experienced recurring problems with providing manpower and paying for supplies.[1] Kacco worked through

---

[1] On November 9, 2010, Steve Louque, Lamar's representative and project manager, sent a certified letter on behalf of Lamar to Noel Buras, the owner of Kacco, expressing concerns regarding the lack of manpower and materials to timely complete the project. On November 16, 2010, Mr. Buras responded by email and explained that the supply company put his account on hold. Mr. Buras expressed that Kacco could not pay the balance down because it did not have sufficient funds. Mr. Buras requested that Lamar issue a joint check to Kacco and the supplier. Lamar agreed to issue a joint check but only if

November and December. Toward the end of November, Kacco submitted an invoice for work performed that month. The invoice submitted at the end of December reflected that forty-five percent of the work had been performed. Lamar issued a check to Kacco on December 30, 2010.[2] Notably, Lamar made this payment prior to receiving payment from the owner.[3]

On January 13, 2011, Lamar sent another email to Kacco addressing continuing concerns with Kacco's ability to perform its work under the contract. Kacco responded to Lamar's concerns regarding manpower and materials and asked to be allowed to finish the job. Kacco then continued working on site, completing the metal framing and stud work. Lamar inspected the work and found some deficiencies, which were noted on a punch list.

On January 31, 2011, Kacco notified Lamar that Kacco was waiting on the payment of its December invoice to pay the supplier and order the necessary supplies to complete the punch list. Lamar had received payment from the owner on January 26, 2011; however, pursuant to the subcontract, Lamar was not required to make payment to Kacco until February 9, 2011, ten business days later.

On February 3, 2011, Lamar sent notice to Kacco stating that Kacco's subcontract would be terminated if Kacco did not provide sufficient manpower and materials within forty-eight hours. Kacco did not respond to Lamar or return to the job

---

Kacco agreed to a 10% back charge for the cost of the materials purchased. Kacco declined. In the interim, Mr. Buras was able to pay the supply company debt down; thus, enabling Kacco to purchase more supplies and continue the framing work.

[2] Kacco's owner, Mr. Buras, deposited the check; however, Kacco's bank dishonored the check due to his failure to properly endorse the check. Mr. Buras mistakenly believed the check was returned for insufficient funds and informed some of his employees and suppliers to hold checks he had issued due to the returned check. Once Lamar learned of these assertions, the business relationship between Lamar and Kacco declined. At one point, Mr. Lourque of Lamar threatened to file a defamation suit against Mr. Buras. However, Mr. Buras ultimately apologized, and Lamar did not pursue any legal action.

[3] The owner's check was dated December 28, 2010. However, the record reveals Lamar did not receive the owner's check until January 7, 2011, eleven days after Lamar issued its check to Kacco.

2

site. Lamar officially terminated Kacco's subcontract in a letter dated February 5, 2011. After termination of the subcontract with Kacco, Lamar hired another contractor to complete the work.

Subsequently, Lamar filed a breach of contract suit against Kacco. It alleged that Kacco breached the contract between the parties and that this breach caused damages. Lamar also sought attorney's fees and costs.

Kacco filed a reconventional demand against Lamar, alleging Lamar failed to pay Kacco for work performed under the contract. Kacco also alleged Lamar's failure to pay Kacco as needed caused Kacco to breach. Kacco also sought attorney's fees and costs.

After a bench trial, the district court entered judgment on the main demand for Lamar in the amount of $24,116.67 with interest from demand, plus attorney's fees in the amount of $7,681.75 and costs in the amount of $3,105.81. Additionally, the district court entered a judgment in the amount of $60,020.00 plus interest from demand in favor of Kacco on the reconventional demand.[4]

In written reasons for judgment, the district court made a finding of fact that Kacco breached the contract between the parties by failing to provide sufficient materials to complete the job. However, citing La. Civ. Code art. 2003, the district court found Lamar negligently withheld payments for completed work performed by Kacco, which contributed to Kacco's breach. As a result, the district court concluded that Lamar's negligence contributed to Kacco's failure to perform and reduced Lamar's damages in proportion to this negligence.

Lamar appealed the judgment. The court of appeal affirmed the judgment in its entirety. *Lamar Contractors, Inc. v. Kacco, Inc.*, 14-1360 (La. App. 4 Cir. 7/1/15),

_____

[4] The judgment does not explicitly set forth the amount of the award prior to reduction; however, the court's written reasons detail the unreduced damages.

3

174 So. 3d 82.

Upon Lamar's application, we granted certiorari to review the correctness of this decision. *Lamar Contractors, Inc. v. Kacco, Inc.*, 15-1430 (La. 11/20/15), ___ So.3d ___. The sole issue presented for our consideration is whether the district court erred in reducing Lamar's damages for breach of contract based on a finding that Lamar's negligence contributed to Kacco's breach of the contract.[5]

## DISCUSSION

At the outset, we find no manifest error in the district court's findings that Kacco breached its subcontract with Lamar and that Lamar was entitled to damages as a result of that breach. Rather, our sole focus is on whether Lamar's actions during the relevant time frame contributed to that breach for purposes of La. Civ. Code art. 2003. That article provides:

> An obligee may not recover damages when his own bad faith has caused the obligor's failure to perform or when, at the time of the contract, he has concealed from the obligor facts that he knew or should have known would cause a failure.
>
> **If the obligee's negligence contributes to the obligor's failure to perform, the damages are reduced in**

---

[5] The sole assignment of error in Lamar's writ application was as follows:

> The Fourth Circuit Court of Appeal erred when it affirmed the Trial Court's ruling that Lamar negligently withheld payment to Kacco and reduced the damage award in favor of Lamar under Louisiana Civil Code article 2003 when payment was not due by Lamar and Lamar had the right to withhold payment under the subcontract after Kacco defaulted and the subcontract was terminated by Lamar.

After we granted the writ, Lamar added additional assignments of error in its brief, seeking an increase in damages and attorney's fees. In granting the writ under the exercise of our discretionary certiorari powers, we did not intend to address any additional issues beyond those narrowly raised in Lamar's original assignment of error. Accordingly, we limit our consideration in this opinion solely to the single assignment of error as set forth in Lamar's writ application. *See, e.g.*, *Boudreaux v. State*, 01-1329 (La. 2/26/02), 815 So. 2d 7 (declining to "address questions that were neither presented in the application for certiorari nor fairly included in the questions that were presented").

**proportion to that negligence.** [emphasis added].

This obligation is correlative to the general duty imposed by La. Civ. Code art. 1983, which requires "[c]ontracts must be performed in good faith." Professor Litvinoff discussed the meaning of good faith in a contractual context as follows:

> Another attempt to explain the meaning of good faith focuses on the benefits or advantages parties expect to derive from their contracts. In that approach, besides abstention from malice, good faith demands from each party abstention from any action or inaction that may prevent the other from obtaining the benefit that the latter warrantedly expected to obtain. That view is carried a step forward when the assertion is added that the duty of good faith may not only proscribe undesirable conduct, but may also require each party to take affirmative action to cooperate in the attainment of his goals by the other.... In sum, a promisee must not only not hinder the rendering of performance by his promisor, but also do whatever is necessary to enable the promisor to perform.
>
> In civil-law terminology that view could be expressed by saying that an obligee, especially one who is also an obligor of a reciprocal obligation, should not only abstain from contributing to the failure of the cause of his obligor's obligation, but must do as much as he can to allow that cause to remain, if possible, intact during the life of the contract.

Saul Litvinoff, Good Faith, 71 TUL. L.REV. 1645 (1997).

Nonetheless, this general duty of good faith cannot be considered in isolation. Rather, it is necessarily regulated and circumscribed by the obligations imposed by the parties' contract.

Although we have not had occasion to consider La. Civ. Code art. 2003 since its enactment in 1985, jurisprudence interpreting the predecessor article, La. Civ. Code art. 1934 of 1870, emphasized that the obligor must establish that the obligee breached the contract, thereby making it more difficult for the obligor to perform its obligation. *See, e.g.*, *Board of Levee Com'rs of Orleans Levee Dist. v. Hulse*, 120 So. 589, 590, 167 La. 896, 898-99 (1929) (explaining that the plaintiff breached its obligations under

5

the contract, thereby making the performance of the contract much more difficult for the contractor).

Similarly, in *Favrot v. Favrot*, 10-986 at p. 16 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1109, *writ denied*, 11-636 (La. 5/6/11), 62 So.3d 127, the court of appeal concluded that the question of a party's good or bad faith does not become relevant until there has been a determination that the party failed to perform an obligation under the contract:

> Judicial inquiry, however, into an obligor's (or even in some cases an obligee's good-faith performance of the obligation is not triggered by the morality of a party's intentions, but is initiated only when the obligee has proven a failure to perform an obligation.
>
> **Stated another way, we do not examine a party's good faith (or bad faith) unless and until we find that the party has failed to perform an obligation, from which the obligee has sustained damages.** [emphasis added].

Taken as a whole, these authorities support the proposition that an obligor cannot establish an obligee has contributed to the obligor's failure to perform unless the obligor can prove the obligee itself failed to perform duties owed under the contract. Stated in other words, Kacco must demonstrate that Lamar failed to perform its obligations under the contract, which in turn contributed to Kacco's breach of the contract.

The undisputed facts establish that, on January 31, 2011, Kacco notified Lamar that Kacco was waiting on the payment of its December invoice to pay the supplier and order the necessary supplies to complete the punch list. Lamar had received payment from the owner on January 26, 2011. However, pursuant to the terms of the contract, Lamar was not required to make payment to Kacco until February 9, 2011, ten business days later.

On February 3, 2011, during this ten-day period, Lamar advised Kacco that

Kacco's contract would be terminated if Kacco did not provide sufficient manpower and materials within forty-eight hours. Kacco did not respond to Lamar or return to the job site. Lamar officially terminated Kacco's subcontract in a letter dated February 5, 2011. Thus, the contract was terminated on February 5, 2011, before Lamar's obligation to make payment to Kacco became due on February 9, 2011.

Under these circumstances, it is clear Lamar did not violate any obligation owed under the contract to make payment to Kacco and could not have negligently contributed to Lamar's breach of its obligations under the contract. Accordingly, the district court erred in applying the provisions of La. Civ. Code art. 2003 to reduce Lamar's award of damages.

## DECREE

For the reasons assigned, the judgment of the court of appeal is vacated insofar as it affirms the district court's judgment reducing the award of damages in favor of Lamar Contractors, Inc. The case is remanded to the district court for the sole purpose of entering an amended judgment in favor of Lamar Contractors, Inc. for the full amount of damages previously determined with no reduction for contributory negligence. In all other respects, the judgment of the court of appeal is affirmed.[6] All costs in this court are assessed against defendant, Kacco, Inc.

---

[6] By way of clarification, because Lamar's writ application did not challenge Kacco's reconventional demand, the award on Kacco's reconvention demand remains intact. See footnote 5, *supra*.

05/03/16

SUPREME COURT OF LOUISIANA

No. 2015-C-1430

LAMAR CONTRACTORS, INC.

VERSUS

KACCO, INC.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ST. BERNARD

**CRICHTON, J., additionally concurs and assigns reasons.**

I agree with the per curiam opinion. I write separately to note that this holding is compelled, in my view, by the Civil Code dictate that "[c]ontracts have the effect of law for the parties." La. C.C. art. 1983. Louisiana courts have never before imposed a theory of negligence upon a contractor where there has been no underlying finding of breach of contract. Because there was no such finding here, to hold otherwise would impose a new duty beyond the scope of the contract, which, in my view, this Court properly declines to do.