STATE OF LOUISIANA     \*     NO. 2022-KA-0669

VERSUS     \*

    COURT OF APPEAL

WILLIAM SERIGNE, SR. AND     \*

LIONEL SERIGNE, JR.     FOURTH CIRCUIT

    \*

    STATE OF LOUISIANA

    \* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 381-470, DIVISION "D"
Honorable Kirk A. Vaughn, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge
Nakisha Ervin-Knott)

Jeff Landry
J. Taylor Gray
M. Joseph LeBeau
LOUISIANA ATTORNEY GENERAL'S OFFICE
CRIMINAL DIVISION
P.O. Box 94005
Baton Rouge, LA 70804

       COUNSEL FOR APPELLANT

Edward Joseph Castaing, Jr.
CRULL CASTAING & LILLY
2323 Pan American Life Center
601 Poydras Street, Suite 2323
New Orleans, LA 70130

Michael C. Ginart, Jr.
LAW OFFICES OF MICHAEL C. GINART, JR. & ASSOCIATES
2114 Paris Road
Chalmette, LA 70043

       COUNSEL FOR DEFENDANT/APPELLEE

             **VACATED AND REMANDED**
             **AUGUST 29, 2023**

In this criminal appeal, Appellant, the State of Louisiana (the "State"), seeks review of the district court's October 23, 2020 judgment, which granted Appellee/Defendant's, William Serigne, Sr. ("William"), motion to reconsider motion to dismiss two of three indictments and quashed two of the indictments. After review, we vacate the district court's judgment, reinstate Counts 2 and 3 of the indictments, and remand this matter to the district court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

This case has a long and storied history. In order to contextualize the matter now before this Court, we find it necessary to provide an overview of the prosecutorial history of William. For the sake of brevity, we will limit any discussion of the other defendant in these proceedings, William's brother, Lionel Serigne ("Lionel"), to only what is pertinent to the issues now on appeal.

In an earlier appeal, this Court provided a cogent account of the underlying facts in this case:

> In 2009, D.A., then age thirty-nine, came forward to authorities to report sex crimes committed by her first cousins, brothers Lionel and William []. She reported that the crimes had taken place commencing over thirty years prior when she was six years old and continuing through and until she was about twelve years old. She reported that a number of sexual acts were committed against her beginning with Lionel, who is eleven years older, and then followed by William, who is four years older. D.A. subsequently had conversations with her cousins B.M. and M.S., who thereafter reported that sex crimes were committed against them by William [], the uncle of B.M., and the father of M.S.

*State v. Serigne*, 14-0379, pp. 1-2 (La. App. 4 Cir. 5/2/16), 193 So.3d 297, 302-303. "[I]n 2010, William [] was indicted on three charges, aggravated rape during the year 1981 (D.A.), sexual battery on or about October 31, 2004 (B.M.), and, aggravated incest during the year 1998 (M.S.)." *Id.* at p. 2, 193 So.3d at 303. Lionel was indicted on a single charge, aggravated rape of a juvenile, namely D.A. *Id.* On September 28, 2011, the State filed a motion to amend William's indictment for aggravated rape as well as Lionel's single indictment to substitute the year of the alleged rape in each. *Id.* at pp. 2-3, 193 So.3d at 303. Thereafter, the State filed a motion to consolidate William's and Lionel's trials, which the district court denied. *Id.* at p. 3, 193 So.3d at 303.

"After the [district] court denied the [S]tate's motion to try the defendants together, the [S]tate convened a second grand jury and obtained a new indictment." *State v. Serigne*, 16-1034, p. 1 (La. 12/6/17), 232 So.3d 1227. "This second indictment, which jointly indicted the defendants, added a new element of the charge of aggravated rape as to each defendant, and reflected different dates for the charged offenses." *Serigne*, 14-0379, p. 3, 193 So.3d at 303. At this juncture, the indictments for both William and Lionel were as follows:

> **Count 1** That WILLIAM R. SERIGNE, SR., ... on or after March 28, 1981 until and throughout the year 1983, ... did commit aggravated rape upon D.A., date of birth December 27, 1970, by having sexual

2

intercourse with D.A.; by having sexual intercourse with D.A. when two offenders participated in the act, the second offender being LIONEL R. SERIGNE, JR.; when the victim was prevented from resisting the act from threats of great and immediate harm, in violation of LA R.S. 14:42, to-wit: AGGRAVATED RAPE.

**Count 2** ... LIONEL R. SERIGNE, JR., ... between and including the years 1976 and 1983, did commit aggravated rape upon D.A., date of birth December 27, 1970, ... by having sexual intercourse with D.A.; by having sexual intercourse with D.A. when two offenders participated in the act, the second offender being WILLIAM R. SERIGNE, JR. [sic]; when the victim was prevented from resisting the act from threats of great and immediate harm, in violation of LA R.S. 14:42, to-wit: AGGRAVATED RAPE.

**Count 3** ... WILLIAM R. SERIGNE, SR., on or after March 28, 1981 until and throughout the year 1983, did commit aggravated rape upon D.A., date of birth December 27, 1970, by having sexual intercourse with D.A.; when the victim was prevented from resisting the act from threats of great and immediate harm, in violation of LA R.S. 14:42, to-wit: AGGRAVATED RAPE.

**Count 4** ... between October 22, 2004 and November 1, 2004, WILLIAM R. SERIGNE, SR., did commit a sexual battery of B.M., date of birth July 25, 1996, in violation of LA. R.S. 14:43.1, to wit: SEXUAL BATTERY, by fondling the genitals of the minor victim, B.M.

**Count 5** ... during the years 1983[sic], 1994, 1995, 1996, 1997, 1998 and 1999, WILLIAM R. SERIGNE, SR., did commit aggravated incest upon his biological daughter, M.S., date of birth October 19, 1987, by lewd fondling or touching, and engaging in sexual acts with M.S., including in the alternative, sexual battery, molestation of a juvenile and other prohibited sexual activity considered a crime under the laws of the State of Louisiana, all in violation of LA. R.S. 14:78.1, to-wit: AGGRAVATED INCEST.

On November 8, 2013, the district court found William guilty on Counts 1, 4 and 5 and not guilty on Count 3, while Lionel was found guilty on Count 2 of the indictment. [1]

---

[1] After the district court, on its own motion, amended the verdict on Count 1 to a lesser included offense, William was ultimately convicted of: (Count 1) forcible rape as to D.A.; (Count 4) sexual battery of a minor as to B.M.; and (Count 5) aggravated incest as to M.S.

On May 2, 2016, this Court reversed the convictions of both defendants on appeal. This Court found the evidence was sufficient to support William's convictions; however, the Court found the defendants should not have been tried jointly because Lionel was charged with a capital offense, which could only be tried before a jury, and William was charged with non-capital offenses, which could be tried by a judge or jury. In addition, this Court ordered and reviewed the grand jury testimony and found there was a *Brady*[2] violation since the transcript contained no evidence that would support the State's allegation of joint participation in the rape of D.A. *State v. Serigne*, 14-0379, p. 32 (La. App. 4 Cir. 5/2/16), 193 So. 3d 297, 319.

The State sought a writ in the Louisiana Supreme Court seeking reversal of this Court's ruling. The State asserted that the issue was whether the Fourth Circuit erred in reversing William's convictions and sentences, and it requested that the Supreme Court reinstate the convictions imposed by the district court. In response, William filed an opposition, in which he asserted that the State failed to properly raise errors regarding all convictions; as such, the State abandoned the arguments as to Counts 2 and 3. The State filed a supplemental writ application, noting that it had properly sought to have the Supreme Court reverse this Court's decision and reinstate all convictions and sentences. William then moved to strike or oppose the State's supplemental writ application. The State filed an opposition to William's motion to strike.

Following briefing by the parties, the Supreme Court granted writs. *State v. Serigne*, 16-1034 (La. 5/26/17), 221 So.3d 78. The Supreme Court issued a *per curiam* on December 6, 2017, reversing this Court's decision and reinstating the

---

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

convictions and sentences of both defendants. *State v. Serigne*, 16-1034, pp. 8-9, 232 So.3d at 1232. Specifically, that Court set forth:

> [W]e reverse the court of appeal's determination in errors patent review that Lionel['s] conviction and sentence must be set aside because he was unable to validly waive a jury trial. We reinstate Lionel's conviction and sentence. In addition, we reverse the court of appeal's determination that William [] is entitled to a new trial based on a *Brady* violation, which issue was never passed on by the trial court, and we reinstate his convictions and sentences. However, we also remand to the district court for further proceedings to determine if Lionel and William are entitled to new trials based on undisclosed *Brady* material in the grand jury testimony.

*Id*. at p. 9, 232 So.3d at 1232.

Defendants filed a motion for clarification or rehearing the following day; the motion sought clarification of the Supreme Court's ruling and remand on the *Brady* issue; however, it did not seek clarification or reconsideration of the Supreme Court's reinstatement of William's convictions and sentences. The Supreme Court denied rehearing on January 30, 2018.

The matter was remanded to the district court, which subsequently held the required *Brady* hearing. William and Lionel filed a joint brief to support their request for new trials; however, the request made no mention of any continued belief that the State had failed to seek review in the Supreme Court writ application of this Court's reversal of all of his convictions. On September 18, 2018, the district court conducted a hearing, in which it overturned the convictions of both defendants based on the *Brady* issue, and granted new trials. The district court did not limit its ruling to those convictions of William related to victim D.A.; rather, it issued a blanket order granting a new trial. The State noticed its intent to file a supervisory writ application and requested a stay, which the court granted.

5

This Court denied writs on November 8, 2018 under case no. 2018-K-0939. On December 4, 2018, the State filed a writ application with the Supreme Court, requesting that the Court reinstate the convictions and sentences against William and Lionel. In its application, the State also requested a stay, which the Supreme Court granted. Following, on April 15, 2019, the Supreme Court denied the State's writ application, but without a written opinion. *State v. Serigne*, 18-1983 (La. 4/15/19), 267 So.3d 1124 (Clark, J., voting to grant).

After the convictions of both defendants were reversed, the district court ordered separate trials, and the case resumed a pre-trial posture. With regard to William, the State filed an amended indictment on May 31, 2019, entering a *nolle prosequi* as to the original Count 3, aggravated rape of D.A., because William had been acquitted at trial. The counts against William were now as follows: Count 1 – Forcible Rape, a violation of La. R.S. 14:42.1 (1981-1983); Count 2 – Sexual Battery, a violation of La. R.S. 14:43.1 (2004); and Count 3 – Aggravated Incest, a violation of La. R.S. 14:78.1 (1993-1999). At arraignment on July 16, 2019, William requested time to file special pleadings and filed a motion to quash Count 1 of the indictment.

On August 8, 2019, William filed a motion to dismiss Counts 2 and 3 pursuant to La.C.Cr.P. art. 582. In this motion, William again raised the abandonment argument he had previously made in his opposition to the State's writ application to the Supreme Court. William argued that: (1) the State failed seek reinstatement of all of William's convictions and sentences in its original writ application, thereby abandoning those claims; (2) the Supreme Court's rules prohibited the State from raising any new issues after filing the original writ application; and (3) the one-year time delay for commencing a new trial, pursuant

6

to La. C.Cr.P. art. 582,[3] began to run from the date this Court reversed those convictions, May 5, 2016, and the time for retrying William was expired.

The record reflects that this motion to dismiss and various other motions, which included a joint motion to quash based upon prosecutorial misconduct and /or double jeopardy filed on behalf of both William and Lionel, were properly filed with the district court but never came before the court for a hearing. Rather, after considering the various pleadings associated with these motions, Judge Robert A. Buckley issued a judgment and reasons for judgment on January 16, 2020. Judge Buckley granted William's motion to quash Count 1 of the indictment based upon exclusive juvenile jurisdiction, denied William and Lionel's joint motion to quash based upon double jeopardy, and granted the motion to quash based upon prosecutorial misconduct, but noted that because of prior rulings the misconduct issue was moot. Notably absent from the judgment was any reference to the motion to dismiss (or quash) based upon La. C.Cr.P. art. 582. Following the hearing, William and Lionel jointly filed a motion to set return date for supervisory writ application on January 28, 2020. On February 21, 2020, William and Lionel jointly filed an unopposed motion to extend the return date for supervisory writ application; however, no application was ever made to this Court.

In the interim, Judge Buckley retired on January 31, 2020, and was replaced by Judge *Pro Tempore* Robert Klees. On September 25, 2020, William filed a motion to reconsider motion to dismiss Counts 2 and 3 pursuant to La. C.Cr.P. 582,

---

[3] La. C.Cr.P. art. 582, which provides the time limitations for a new trial, states:

> When a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within the period established by Article 578, whichever is longer.

7

contending that Judge Buckley's January 16, 2020 judgment had not adequately addressed William's motion to dismiss. A hearing on this and other pending motions was set for September 30, 2020.[4] After hearing counsels' arguments on the numerous motions, Judge Klees took the matter under advisement. On October 23, 2020, Judge Klees rendered judgment, granting William's motion to dismiss Counts 2 and 3, from which the State timely filed the instant appeal.

## ERRORS PATENT

Appellate courts review all criminal appeal records for the existence of a patent error. An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. C.Cr.P. art. 920(2). A review of the record revealed no errors patent.

## DISCUSSION

This Court has previously explained that "[w]e review a [district] court ruling on a motion to quash on the ground that the time limitation or prescriptive period for commencement of trial has expired under an abuse[] of discretion standard." *State v. West*, 14-0415, p. 3 (La. App. 4 Cir. 11/5/14), 154 So.3d 609, 610 (citing *State v. Dillon*, 11-0188, p. 4 (La. App. 4 Cir. 8/24/11), 72 So.3d 473, 475). Turning to the assignments of error, the State raises two:

 (1) Whether, after a new trial was granted by this court and the Supreme Court reversed that ruling, the district court erred in quashing the charges on the basis that the State had failed to properly seek reinstatement of all convictions in the Louisiana Supreme Court.

(2) Whether, after previously denying a motion to quash the charges, and after no writ application was taken on that ruling, the district court

---

[4] On September 14, 2020, William's counsel submitted a letter to Judge Klees, in which it asserted that Judge Buckley had failed to rule on several other motions as well. The State submitted its own letter to Judge Klees on September 21, 2020, in which it maintained that it did not believe that the motion to dismiss Counts 2 and 3 was still pending as Judge Buckley had properly denied the motion in part.

erred by reconsidering the motion many months later and granting it, without any new evidence offered or adduced.

We will address each assigned error in turn.

### Assignment of Error No. 1 – Whether the State properly sought reinstatement of all of William's convictions in the Supreme Court writ application

First, the State insists that in its original writ application to the Supreme Court, it unequivocally requested that all convictions and sentences for William be reinstated. Conversely, William posits that the State's June 1, 2016 writ application to the Supreme Court was the only timely-filed document in the State's writ application, that the writ application only addressed the single conviction and sentence pertaining to the alleged victim, D.A., and that the Supreme Court must not have considered William's supplemental writ application because it was not addressed in the Supreme Court's *per curiam*. Based upon our review, we find merit in the State's argument.

In its December 6, 2017 *per curiam*, the Supreme Court highlighted the fact that when this Court reversed all of William's convictions and sentences, it was based upon a single issue—whether William had suffered prejudice in his trial regarding all three alleged victims, D.A., M.S. and B.M., for the potential *Brady* violations relating solely to D.A. *Serigne*, 16-1034, p. 8, 232 So.3d at 1231-1232. Therefore, when we review the State's June 1, 2016 writ application within the context of that single issue, we find the State's application to the Supreme Court to be clear in its second assignment of error pertaining to William when it asked, "did the Fourth Circuit err in reversing William's *convictions* and *sentences* because the State failed to disclose the grand jury testimony of D.A [the source of the potential *Brady* violations and subsequent misjoinder] . . . ?" (emphasis added). In other

9

words, we read this assignment of error to question the necessity of vacating the convictions and sentences related to all three victims when the potential *Brady* violations only pertained to one of the victims.

Even more convincing to this Court is our reading of the plain language of the Supreme Court's *per curiam*. When issuing its ruling, the Supreme Court decreed that "[w]e reinstate Lionel's conviction and sentence. In addition, we reverse the court of appeal's determination that William [] is entitled to a new trial based on a *Brady* violation, which issue was never passed on by the trial court, and we reinstate his convictions and sentences." *Serigne*, 16-1034, p. 9, 232 So.3d at 1232. Further, the Supreme Court preserved William and Lionel's rights to "appeal any unfavorable determination by the district court on remand as well as seek appellate review of any previously pretermitted assignments of error." *Id.* Lionel had only been convicted and sentenced for one criminal count, and the Supreme Court's pronouncement is reflective of that. William was convicted and sentenced for three criminal charges, but only one of those was related to D.A. We find that the Supreme Court demonstrated that it is perfectly capable of differentiating between the usages of singular nouns as opposed to the plural versions of those nouns; therefore we have determined that all three of William's convictions and sentences were reinstated by the Supreme Court. This argument has merit.

Second, the State explains that because William filed an opposition to the State's writ application, in which he alleged that the State had abandoned any challenge of a new trial in relation to M.S. and B.M., it felt compelled to file a

supplemental writ application to clarify the original application.[5]  In addition, each party extensively briefed the issues prior to the Supreme Court granting writs. Therefore, the State asserts that the Supreme Court obviously considered all of the documents submitted by both parties prior to granting writs because it explicitly reinstated all of the convictions and sentences against William.  In response, William argues that if the Supreme Court did consider any documents other than the timely-filed original writ application, it would be violative of La. C.C.P. art. 2166(A)[6], the Court's own rules[7] and jurisprudence.

---

[5] The State's supplemental writ was filed on June 28, 2016, and the Supreme Court granted writs on May 26, 2017.  William's opposition to the State's supplemental writ was also filed on June 28, 2016.

[6] La. C.C.P. art. 2166(A) provides, in pertinent part:

> Within thirty days of the transmission of the notice of the judgment of the court of appeal, a party may apply to the supreme court for a writ of certiorari. The judgment of a court of appeal becomes final and definitive if neither an application to the court of appeal for rehearing nor an application to the supreme court for a writ of certiorari is timely filed.

[7] William asserts what he believes are potential violations of certain portions of the Supreme Court's Rules located in Rules VII, X and XLII (Supreme Court Rule XLII relates to electronic filing—William highlights this rule to demonstrate that it has the same thirty-day filing requirement as Rule X).

William specifically addresses the following:

Supreme Court Rule VII, §§ 4-6, which provide, in pertinent part:

> **Section 4.** The brief for the appellant, applicant or relator, as the case may be, shall set forth . . . (2) a concise statement of the case; (3) a specification of the alleged errors complained of . . .
> * * *
> **Section 6.** When a brief is filed for a criminal review, the argument on the assignment of error must include a suitable reference by page number, or by any more precise method of location, to the place(s) in the transcript which contains the basis for the alleged error. If the party fails to do so, the court may disregard that argument. The court may consider as abandoned any assignment of error which has not been briefed.

Supreme Court Rule X, § 1(b), which provides:

> The application for writs shall address, in concise fashion, why the case is appropriate for review under the considerations stated in subsection (a) above, in accordance with Section 3 or 4 of this rule.

Judge Klees was largely persuaded by William's arguments. In his reasons for judgment, Judge Klees espoused the view that the State's June 1, 2016 writ application was ambiguous as to whether the State sought reinstatement of all three counts against William, or whether it only made application for the single count related to D.A.  Further, Judge Klees agreed with William that if the Supreme Court had considered the State's supplemental writ application in its deliberations, it would appear to have violated Supreme Court Rules VII and X, and be out of step with jurisprudence.  In support of this position, Judge Klees cited to the Supreme Court opinion of *Boudreaux v. State, Dept. of Transp. and Dev.*, 01-1329 (La. 2/26/02), 815 So.2d 7.

In *Boudreaux*, the Supreme Court found that, under its rules, the defendant in that case had abandoned one assignment of error listed in its writ application because it failed to brief the issue before oral argument.  Additionally, that Court held that issues that were briefed for oral argument, but not contained in the writ application prior to the Court granting writs, were not properly before it.  The *Boudreaux* Court explained that "it is imperative that we not be blind sided [sic] after we grant a writ application with questions which did not appear in the application for a writ of certiorari."  *Boudreaux*, 01-1329, p. 5 (La. 2/26/02), 815

Supreme Court Rule X, § 4 (3)(b) and (d), which provide:

> In criminal cases, a writ application shall contain:
> (b) An assignment of errors in the opinion, judgment, ruling or order complained of;
> (d) An argument of each assignment of error on the facts and law, addressing particularly why the case is appropriate for review under the considerations stated in Section 1(a) of this rule.

Supreme Court Rule X, § 5(a)(1), which provides, in relevant part:

> An application seeking to review a judgment of the court of appeal . . . shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal . . . .

12

So.2d at 10-11. We find this case to be easily distinguishable from the case *sub judice*.

Here, review of the record shows that the supplemental writ and the objections to the supplemental writ were filed nearly eleven (11) months before the Supreme Court granted writs; thus, the Court was not blind-sided. Applying the *Boudreaux* factors to the matter before us, we find that the State did raise the issue of all three convictions in its assignment of error, and both sides briefed the issue before the Supreme Court granted writs and before oral argument. Therefore, the issue was not abandoned. Moreover, we note the stark contrast that can be found in *Boudreaux* and the myriad Supreme Court cases cited by William.[8] In each of those opinions, the Supreme Court gave a well-delineated explanation of why it would or would not consider certain arguments based upon its rules. By its silence and clear ruling to reinstate William's convictions and sentences, and by establishing a long line of jurisprudence dealing with Supreme Court rule violations, we presume the Supreme Court found nothing to be amiss with the State's application and ruled accordingly. This assignment of error has merit.

***Assignment of Error No. 2 – Whether the district court erred by reconsidering and granting the motion to dismiss after previously rendering judgment on the motion***

---

[8] *See, e.g., Westlawn Cemeteries, LLC v. La. Cemetery Bd.*, 21-01414, p. 10 (La. 3/25/22), 339 So.3d 548, 558 (where the Court noted that "Louisiana Supreme Court Rule VII § 4(3) requires an appellant's brief to contain 'a specification of the alleged errors complained of.' Because the issue . . . was not raised as an assignment of error, nor briefed, it is not properly before this Court."); *Rand v. City of New Orleans*, 14-2506, p. 3 (La. 6/30/15), 173 So.3d 1148, 1150 n.3 (where the Court declared that it would not address an issue, finding that "the City abandoned this argument on appeal by failing to assign it as error.") (citing *Boudreaux v. State, Dep't. of Transp. and Development*, 01-1329, pp. 4-5 (La. 2/26/02), 815 So.2d 7, 10-11); *Lamar Contractors, Inc. v. Kacco, Inc.*, 15-1430, p. 4 (La. 5/3/16), 189 So.3d 394, 397 n.5 (where the Court declined to address assignments of error which were raised in briefs after the Court had already granted the writ).

The State asserts that Judge Buckley's January 16, 2020 judgment clearly disposed of William's motion to dismiss; therefore, that ruling established "the law of the case" as to the issue of whether the State timely commenced a new trial for Counts 2 and 3 as required by La. C.Cr.P. art. 582.[9] As a result, the State contends that William's subsequent motion to reconsider the motion to dismiss must necessarily fail because it merely sought to re-litigate the exact same issue. In opposition, William argues that: (1) the State did not argue the law of the case doctrine before the district court and is consequently precluded from raising this issue for the first time on appeal; and (2) the law of the case doctrine cannot apply in this instance because Judge Buckley did not address the motion to dismiss in either the judgment or in the court's reasons for judgment. Based upon our review, we find that the "law of the case" rule does not apply as argued by the State.

In short, the "'law of the case' rule is merely a court practice usually applied at the appellate court level in regard to parties who have had the identical issue presented and decided previously by that appellate court in an earlier appellate proceeding in the same case." *Babineaux v. Pernie-Bailey Drilling Co.*, 261 La. 1080, 1093, 262 So.2d 328, 332-33 (La. 1972) (citing *Labourdette v. Doullut & Williams Shipbuilding Co.*, 156 La. 412, 100 So. 547 (1924)). "When the law of the case is applied to certain trial court rulings, it is for that court a discretionary guide." *Id.* The transcript of the September 30, 2020 hearing before Judge Klees reveals that the law of the case doctrine was actually raised by the State. Nevertheless, we find that Judge Buckley's January 16, 2020 judgment did not, in

---

[9] The State asserts that due to the various stays, recusals of judges and other interruptions in the prescriptive period, the time limitation to commence a new trial will not begin to run until one year after this Court issues a ruling favorable to the State. *See* fn. 3, *supra.*

fact, render judgment on William's motion to dismiss Counts 2 and 3. Our review of the record indicates that no hearing was held on the motion and the judgment did not expressly rule on the motion to dismiss Counts 2 and 3 based upon La. C.Cr.P. art. 582. Even assuming, *arguendo*, that Judge Buckley did address the motion to dismiss in his written reasons for judgment, "it is well-settled law that the [district] court's oral or written reasons form no part of the judgment." *State v. Williams*, 11-0958, p. 8 (La. 7/2/12), 94 So.3d 770, 776 (quoting *Burmaster v. Plaquemines Parish Gov't*, 07-1311, pp. 1-2 (La. 8/31/07), 963 So.2d 378, 379 (per curiam)). Consequently, we find the law of the case doctrine to be inapplicable in this instance. This argument is without merit.

Furthermore, although defense counsel styled its motion to Judge Klees as a motion to reconsider, this is of no moment. "[I]t is well-settled that a pleading's nature is determined by its substance, not its caption." *Jones v. Boot Bar & Grill*, 22-0154, p. 16 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 980 (quoting *Adolph v. Lighthouse Prop. Ins. Corp.*, 16-1275, p. 1 (La. App. 1 Cir. 9/8/17), 227 So.3d 316, 323). Because we find that Judge Buckley did not rule on William's original motion to dismiss Counts 2 and 3, there was nothing for the district court to reconsider. Our review of the merits of William's motion to reconsider makes it evident that the motion is in actuality a motion to quash Counts 2 and 3 based upon the State's failure to timely commence a new trial. Similarly, we find the motion to dismiss Counts 2 and 3 to be a motion to quash, in spite of its caption.[10] As the

---

[10] Our review of William's motion to dismiss Counts 2 and 3 makes it clear that the nature of the relief sought and the arguments made in support can only be considered a motion to quash when read in concert with La. C.Cr.P. art. 531 ("All pleas or defenses raised before trial, other than mental incapacity to proceed, or pleas of 'not guilty' and of 'not guilty and not guilty by reason of insanity,' shall be urged by a motion to quash.") and La. C.Cr.P. art. 532 ("A motion to quash may be based on one or more of the following grounds. . . (7) The time limitation . . . for the commencement of trial has expired.")

State points out, this Court has held that there is no prohibition against filing multiple motions to quash based upon timeliness to commence trial. *See State v. Martin*, 14-0740, pp. 5-6 (La. App. 4 Cir. 2/4/15), 160 So. 3d 1028, 1031. Therefore, we find that it was procedurally proper for the district court to rule on the motion to reconsider motion to dismiss Counts 2 and 3; however, for the reasons stated above, we find the district court abused its discretion when it granted the motion and dismissed Counts 2 and 3 against William.

## CONCLUSION

For the foregoing reasons, we find that the district court abused its discretion when it granted William's motion to reconsider motion to dismiss Counts 2 and 3 pursuant to La. C.Cr.P. art. 582. Accordingly, we vacate the district court's judgment, reinstate Counts 2 and 3 of the indictments, and we remand this matter to the district court for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

16